IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 111,444

STATE OF KANSAS,
*Appellee*,

v.

DARON INGHAM,
*Appellant.*

SYLLABUS BY THE COURT

1.

Witnesses and counsel may use common words and phrases that accurately and correctly describe people, things, and situations, even if the words or phrases have connotations broader than the meaning intended in the trial context.

2.

Failure to submit to the jury an essential element of a crime for factual determination violates a defendant's Sixth Amendment right to trial by jury.

3.

Where there is error of a constitutional dimension, this court may find the error harmless so long as there was no reasonable possibility that it affected the outcome of the trial.

Review of the judgment of the Court of Appeals in an unpublished opinion filed December 4, 2015. Appeal from Reno District Court; TRISH ROSE, judge. Opinion filed November 30, 2018. Judgment of the Court of Appeals affirming the district court is affirmed. Judgment of the district court is affirmed.

1

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, argued the cause and was on the brief for appellant.

*Andrew R. Davidson,* assistant district attorney, argued the cause, and *Derek Schmidt*, attorney general, was with him on the brief for appellee.

The opinion of the court was delivered by

ROSEN, J.: Daron Ingham was convicted of one count of possession or use of a commercial explosive. The Court of Appeals affirmed the conviction, and this court granted review.

FACTS

In an early afternoon in March 2013, Jake Trussell, an employee of the Reno County Sheriff's Department, received a call about an explosion at a trailer park in Nickerson, Kansas. Trussell drove to the site of the reported explosion, where a woman, followed by Ingham, met him at the door of a trailer home. When asked if he had heard or caused any explosions, Ingham stated that he was responsible for them.

Ingham said that he had made "firecrackers" in an attempt to blow up boulders. The components were a beer can, a fuse, green tape, and gunpowder. Ingham said he set off the explosion in a cement mixer by the front door of the trailer, and Trussell found a damaged can in the mixer. Ingham then said that he was using the "fireworks" to blow up rocks inside the cement mixer in order to extract gold from them. Ingham showed Trussell the backseat of his truck, which was parked in the driveway and contained a roll of green fuse, a container of Pyrodex gunpowder, and a roll of clear tape. As he was showing Trussell the container of gunpowder, Ingham unscrewed the top and poured it

2

onto the ground. At that point, Trussell arrested Ingham and placed him in handcuffs to preclude Ingham from destroying evidence.

Ingham asked to speak with John Orrison, a deputy with the Reno County Sheriff's Department, who had arrived at the scene. Orrison asked him if he had actually built a bomb, and Ingham replied that he had. Ingham explained that he had recently been to Colorado, where he collected rocks that he believed contained gold. He was trying to extract the gold by blowing the rocks into smaller pieces.

While he was investigating the scene at the trailer park, Orrison was notified of a call about someone displaying explosive devices at a gasoline station west of Nickerson. Orrison asked Ingham if had been at the station, and Ingham told him he had been there searching for shed deer antlers. He had brought a device with him to blow up some rocks by a river in the hopes of extracting silver from a vein that supposedly ran along the river. In talking with someone from out of town at the station about what there was to do in that area, Ingham tossed the device to the man and "told him to have some joy."

Captain Steven Lutz of the Reno County Sheriff's Department was called in to help investigate the scene at the trailer park. He examined the shredded can found in the cement mixer and concluded that it was the remnant of an improvised explosive device, which he defined as "any type of device in components other than individually is not dangerous, [*sic*] however when combined creates a device in essence a homemade bomb, a homemade explosive." He retrieved an empty container of Pyrodex smokeless powder. The gunpowder and fuse were lawfully obtained and are not illegal to possess.

The State charged Ingham with one count of criminal use of explosives under K.S.A. 2012 Supp. 21-5814(a)(1) which deals with commercial explosives; one count of criminal use of explosives under K.S.A. 2012 Supp. 21-5814(a)(2), which deals with

simulated explosive devices; and one count of aggravated endangering of a child under K.S.A. 2012 Supp. 21-5601(b)(1). Before trial, the court dismissed the simulated explosive and child-endangerment charges. Following the presentation of evidence, a jury found Ingham guilty of one count of criminal use of explosives under K.S.A. 2012 Supp. 21-5814(a)(1), and the court sentenced him to a standard guideline sentence of 18 months, with probation. Ingham filed a timely notice of appeal. The Court of Appeals affirmed the conviction in *State v. Ingham*, No. 111,444, 2015 WL 8175032 (Kan. App. 2015) (unpublished opinion). This court granted Ingham's petition for review on all issues.

ANALYSIS

*Terminology Employed to Describe the Devices*

Ingham initially contends that the district court erred when it allowed the State to use the phrases "pipe bomb" and "improvised explosive device" to describe the devices that he constructed. He contends those phrases have connotative meanings that would suggest to the jury that he was engaging in terroristic activities or had a terrorist mindset.

Before trial, Ingham made an oral motion in limine to bar the State from using certain words in testimony or argument to the jury:

> "In addition we'd like to make an oral motion that the State instruct its witnesses that they cannot use, include the term, bomb, I.E.D. or pipe bomb and in any of their testimony based on the fact that those terms specifically are more prejudicial than they are probative in nature, Judge [*sic*]. The State could use the word explosive device if necessary, but the terms, bomb, I.E.D. and pipe bomb are more prejudicial than probative."

4

Ingham subsequently explained:

> "Judge, the statement bomb, I.E.D. and pipe bomb are inherently prejudicial and the probative value is little considering the fact that the Court can instruct the State to have his witnesses testify to the fact there was an explosive device. Considering all the recent tragedies that continually occur that are constantly in the public eye, there is the concern is that Mr. Ingham could be convicted based solely on the use of those words. That this incident was something that it was not."

The court denied the motion without explanation. Prosecution witnesses went on to refer to the device as an "improvised explosive device" or "I.E.D." as well as a "pipe bomb." In closing argument, the State repeatedly described it as an improvised explosive device, stating, for example, "He built a bomb. He built an improvised explosive device, which is a commercial explosive."

A district court applies a two-prong test when ruling on a motion in limine. The court evaluates first whether the material or evidence in question will be inadmissible at trial and then that a pretrial ruling instead of a ruling at trial is justified (a) because the mere offer or mention of the evidence at trial may cause unfair prejudice, confuse the issues, or mislead the jury, (b) considering the issue during trial might unduly interrupt or delay the trial, or (c) a pretrial ruling may limit issues and lead to greater litigation efficiency. See *Biglow v. Eidenberg*, 308 Kan. 873, 891-92, 424 P.3d 515, 527-28 (2018).

Ingham contended that the first prong, admissibility, was at issue because the use of the words "bomb," "improvised explosive device," and "pipe bomb" were inherently more prejudicial than probative. This court reviews for abuse of discretion a trial court's determination that the probative value of evidence outweighs the potential for producing undue prejudice. *State v. Wilson*, 295 Kan. 605, 612, 289 P.3d 1082 (2012). A trial court abuses its discretion when it makes a decision that is arbitrary, fanciful, or unreasonable;

5

is based on an error of law; or is based on an error of fact. *State v. Page*, 303 Kan. 548, 555, 363 P.3d 391 (2015).

Given the generalized nature of the argument supporting the motion Ingham made in limine, we find nothing unreasonable in the district court's decision. Ingham was on trial for concocting and detonating explosive devices. The words that he sought to suppress were, as he put it, associated with "tragedies." That is because explosives can be dangerous things, which is why he was on trial. Given the information available to the court at the time of the motion, it was not arbitrary, fanciful, or unreasonable to allow the State to use words that had some connation of harmful results.

Even with the benefit of hindsight, Ingham does not support his claim that the State's choice of vocabulary to describe the things that he made had a prejudicial effect on his defense. He admitted to police that he made the device for the purpose of causing an explosion, and nonterrorist intentions are not a defense to possessing, manufacturing, or transporting commercial explosives. The description of the device applied not to what Ingham might do in the future but to what he had already done, and the jury was given no cause to engage in conjecture about an anti-personnel motivation for constructing a pipe bomb or I.E.D.

Persons of common intelligence know what a bomb is. See *People v. Dimitrov*, 33 Cal. App. 4th 18, 25, 39 Cal. Rptr. 2d 257 (1995). Webster's New World College Dictionary 168 (5th ed. 2016) defines a bomb as a "container filled with an explosive, incendiary or other chemical for dropping or hurling, or for detonation by a timing mechanism." Under this and similar dictionary definitions, the devices that Ingham constructed were certainly bombs, and the court committed no error in allowing witnesses to refer accurately to the devices as "bombs."

Witnesses and counsel may use common words and phrases that accurately and correctly describe people, things, and situations, even if the words or phrases have connotative meanings broader than the meaning intended in the trial context. Witnesses and counsel are not required to tiptoe around such language, possibly inventing euphemisms to replace ordinary English usage.

It is also of no significance that the container was not actually a pipe. Ingham wants this court to conclude that it would make a difference to the jury if he did not pack the explosive materials into a metal tube commonly used as a conduit for liquids or gases but instead packed the explosive materials into a metal tube commonly used as a container of low-calorie beer. This distinction is trivial and was unlikely to cause prejudice in the minds of the jurors.

In addition, Ingham urges this court to find prejudice in describing the device that he improvised in order to create an explosion an "improvised explosive device." We first note that the description was accurate. Ingham admitted that he made the contraption. It was clearly an explosive device. He improvised the device from various elements not made available for the specific purpose of creating ore-refining explosives.

But Ingham asserts that the jury might have associated the phrase with terroristic activity, increasing the likelihood that it would convict him. It is not clear how such a nomenclature was prejudicial:  there was never an allegation that he intended to use the device for terroristic purposes, and there was abundant evidence, including his own statements to investigators, that he intended to possess and manufacture an explosive. Even if the phrase "improvised explosive device" has a special meaning in popular parlance, the evidence was clear that Ingham created and detonated such a device, whether it was for geological or political purposes. We find no prejudice in the use of the phrase.

7

Ingham fails to show that the use of the words at issue was improper or that it unfairly prejudiced his defense. The district court did not abuse its discretion in allowing the prosecution to use words and phrases that correctly and accurately described the explosive contraption that Ingham constructed.

*"Commercial Explosive" Testimony*

During redirect examination of Lutz, the following colloquy took place:

"[PROSECUTOR:]  Q.  Okay. Well, let me ask you this. In your opinion is it legal to fill a Coors Light can with Pyrodex powder, affix a fuse to that device—
"MR. BRAVI:  Objection.
. . . .
"My objection is this invades the province of the jury.

"MR. DAVIDSON:  He was asked about his legal opinion on all these other legal devices.

"THE COURT:  Objection overruled. You may answer.

"[LUTZ:]  A.    My opinion that these legally obtained items were combined to make an illegal improvised explosive device."

K.S.A. 2017 Supp. 60-456 provides that non-expert opinions or inferences that are rationally based on the perception of the witness, that are helpful to a clearer understanding of the witness' testimony, and that are not based on other specialized knowledge are not objectionable simply because they embrace the ultimate issue or issues

8

to be decided by the trier of fact. The statute similarly allows witnesses possessing specialized knowledge to give testimony that embraces an ultimate issue of fact if the testimony is based on sufficient facts or data and is the product of reliable principles and methods and if the witness reliably applied the principles and methods to the facts of the case.

Ingham does not provide any authority for his contention that a witness may not, as he put it, "invade the province of the jury." Witnesses routinely testify as to factual matters that juries are to determine, and K.S.A. 2017 Supp. 60-456 expressly allows testimony embracing ultimate issues to be decided by juries. Lutz' statement was, however, close enough to being testimony that Ingham was guilty of the charged crimes that we will assume, without deciding, that the statement constituted error.

Ingham argues that the testimony in question compromised his federal constitutional right to have the jury determine each element of the charged offense. Assuming error and assuming that it is of a constitutional dimension, this court may find the error harmless so long as there was no reasonable possibility that it affected the outcome of the trial. See *State v. Ward*, 292 Kan. 541, 569-70, 256 P.3d 801 (2011). We noted in our discussion of the previous issue that Ingham did not contest the facts underlying the conviction. He told investigators that he intended to possess and manufacture an explosive. He put gunpowder in a beer can and lit it with a fuse. The admitted facts, coupled with the undisputed testimony of investigators, fell squarely within the statutory definition of an illegal explosive device or commercial explosive. We see no reasonable possibility that Lutz' choice of wording affected the outcome. Any error was therefore harmless.

9

*Instruction on Elements of Criminal Use of Explosives*

Jury Instruction No. 10 reads in part:

"Daron Ingham is charged with the crime of criminal use of explosives. Mr. Ingham pleads not guilty.

"To establish this charge, each of the following claims must be proved:

"1. That Daron Ingham intentionally possessed, manufactured or transported an improvised explosive device, a commercial explosive;

"2. That this act occurred on or about the 17th day of March, 2013 in Reno County, Kansas.

"It is not a defense to this crime that Daron Ingham did not know an improvised explosive device was a commercial explosive.

"'Explosive' shall not include any legally obtained and transferred commercial explosive by licensed individuals and ammunition and commercially available loading powders and products used as ammunition, and consumer fireworks . . . .

"'Commercial Explosive' includes chemical compounds that form an explosive; a combination of chemicals, compounds or materials, including but not limited to, the presence of an acid, a base, dry ice or aluminum foil, that are placed in a container for the purpose of generating a gas or gases to cause a mechanical failure, rupture or bursting of the container, incendiary or explosive material, liquid or solid; detonator; blasting cap; military explosive fuse assembly; squib; electric mathc [*sic*] or functional improvised fuse assembly; or any completed explosive device commonly known as a pipe bomb or a molotov cocktail."

Ingham objected to the instruction on the basis that the instruction removed from the jury the determination of whether the improvised explosive device was a commercial

10

explosive. The trial court overruled the objection. Ingham complains on appeal that the instruction was in error.

When reviewing a challenged jury instruction, this court engages in a progression of analysis. First, it considers the reviewability from both jurisdiction and preservation viewpoints, exercising an unlimited standard of review. The court then must determine whether there was error and, if so, what the effect of the error on the verdict was. In determining whether there was error in giving or failing to give a jury instruction, the court examines whether the instruction was legally and factually appropriate. Whether the instruction fairly and accurately stated the applicable law is subject to unlimited review. Whether there was sufficient evidence, viewed in the light most favorable to the defendant or the requesting party, to support the instruction is akin to the sufficiency of the evidence review generally applied in criminal appeals. Finally, if it concludes that the trial court erred in giving the instruction, this court must make a reversibility determination. If there was an objection, this court determines whether the error was harmless under the test and degree of certainty set out in *State v. Ward*, 292 Kan. 541, 565, 256 P.3d 801 (2011), *cert. denied* 565 U.S. 1221 (2012). *State v. Dominguez*, 299 Kan. 567, 573-74, 328 P.3d 1094 (2014).

Ingham argues on appeal that the instruction reworded the statutory definition of "commercial explosive" by equating a commercial explosive with an "improvised explosive device," a phrase not contained in or defined by statute.

Ingham suggests that the wording of the instruction would lead the jury to conclude that it was sufficient to obtain a conviction if the State proved that he possessed or had constructed an improvised explosive device, which, according to the instruction, was the equivalent of a commercial explosive. The consequence, he argues, is that guilt was implicit in the instruction.

11

It is the role of the jury to determine the facts of a case independent of the trial court and to apply the law to those facts. An instruction that includes a factual determination by the trial court violates a defendant's right to have a jury determine his or her guilt or innocence by invading the province of the jury as the fact-finder. See *State v. Stieben*, 292 Kan. 533, 537, 256 P.3d 796 (2011); *State v. Colbert*, 244 Kan. 422, 427-28, 769 P.2d 1168 (1989).

In *State v. Brice*, 276 Kan. 758, 80 P.3d 1113 (2003), this court reversed a conviction in which the trial court instructed the jury that, for the purposes of aggravated battery, the statutory term "great bodily harm" means a "through and through bullet wound." This court held that the instruction improperly made a factual finding of great bodily harm, denying the defendant his constitutional right to have that finding made by a jury. The court noted:

> "[T]he trial judge instructed the jury that great bodily harm means a through and through bullet wound. In doing so, although not actually instructing the jury that Brice caused great bodily harm to Kelly, the trial judge left no room for the jury to believe otherwise. Clearly, the trial judge led the jury into thinking that an element of the charged offense had been proven so that the jury could not render a verdict for Brice on the basis of a reasonable doubt that he caused great bodily harm to Kelly. The trial judge in effect directed a verdict on an essential element of the aggravated battery charge, 'a result that is condemned by the Constitution. [Citation omitted.]'" 276 Kan. at 771.

The court added that it was impermissible for the trial court to instruct the jury that the evidence—a through and through bullet wound—and an essential element of the offense—great bodily harm—were synonymous. It was error for the trial court to tell the jury that the State's evidence established the essential element of great bodily harm. *Brice*, 276 Kan. at 772.

12

This court discussed a similar instruction in *State v. Sutherland*, 248 Kan. 96, 804 P.2d 970 (1991). In *Sutherland*, we affirmed a conviction of aggravated battery after the jury was instructed that, in order to find the defendant guilty, it had to find that the defendant "'was armed with a deadly weapon, to-wit: a knife.'" 248 Kan. at 99. Because the instruction "place[d] the burden on the State to prove the knife [was] a deadly weapon," it did not take consideration of an element of the crime away from the jury. 248 Kan. at 101. Consistent with the *Sutherland* analysis, we affirmed a conviction in *State v. Sisson*, 302 Kan. 123, 130-32, 351 P.3d 1235 (2015), where the defendant was convicted of possessing drug paraphernalia. One instruction defined paraphernalia to include "scales." Additional instructions elaborated on the elements of the crime, informing the jury that the State had to prove the defendant possessed the scales with a concomitant intent to use drug paraphernalia for the purpose of distributing cocaine and listing factors for the jury to take into account when deciding whether something is drug paraphernalia.

In *State v. Williams*, 308 Kan. ___, ___ P.3d ___ (No. 108,394 this day decided), we considered an aggravated assault instruction that included a requirement that the State prove that the defendant "'used a deadly weapon, a baseball bat.'" In the next sentence, the instruction defined deadly weapon to include "'any instrument which, from the manner in which it is used, is calculated or likely to produce death or serious injury.'" The jury was instructed to consider the manner in which the defendant used the baseball bat and to determine whether the bat was "'calculated or likely to produce death or serious injury'" in order to find it was a "'deadly weapon'" as a required element of aggravated assault. Slip op. at 15. For these reasons, we found no error in the *Williams* instruction because it did not set out a mandatory presumption and adequately and accurately explained to the jury what it had to find in order to determine whether the defendant had used a deadly weapon. Slip op. at 21.

13

The first part of the instruction in the present case was similar to that in *Sutherland*, *Sisson*, and *Williams*. Here, the instruction contained a parallel construction: "improvised explosive device" and "commercial explosive" are treated as equivalent phrases. The instruction went on to state that it was not a defense that Ingham "did not know an improvised explosive device was a commercial explosive." This sentence equated an improvised explosive device with a commercial explosive and, unlike the instructions in *Sutherland* and *Williams* did not convey to the jury that the State had the burden of proving the unlawfulness of the action. In this case, the State had to prove that Ingham possessed, manufactured, or transported a commercial explosive. By telling the jury that "an improvised explosive device was a commercial explosive," the instruction moved beyond informing the jury what the State was required to prove and informed the jury that the State *had* proved an improvised explosive device was a commercial explosive. The remainder of the instruction may have appeared superfluous to the jury; it had already been informed as a matter of law that an improvised explosive device is a commercial explosive. The instruction removed from the jury the critical determination of whether the State had proved an element of the charged crime, in violation of the principles enunciated in *Brice*. For this reason, we determine that the instruction was in error.

Our analysis does not stop at this point, however. *Ward* informs us that instructional error may be deemed harmless. If the error infringes upon a right guaranteed by the United States Constitution, the error may be declared harmless where the party benefitting from the error proves beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, i.e.*,* where there is no reasonable possibility that the error contributed to the verdict. *Ward*, 292 Kan. 541, Syl. ¶ 6.

14

Failure to submit to the jury an essential element of a crime for factual determination violates a defendant's Sixth Amendment right to trial by jury. See, e.g., *Neder v. United States*, 527 U.S. 1, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999); *Brice*, 276 Kan. 758, Syl. ¶ 2. We therefore apply the *Ward* test here.

The instructional conflation of an improvised explosive device with a commercial explosive did not contribute to the subsequent verdict. Ingham admitted to police that he made the explosive device. He admitted that he detonated it. He admitted that he placed chemicals or materials in a container for the purpose of causing the container to rupture. He admitted to all the facts necessary to establish that he intentionally possessed, manufactured, and transported a commercial explosive. Law enforcement investigators testified about and provided physical evidence reinforcing Ingham's admissions. None of the evidence was contradicted. The erroneous part of the instruction simply provided redundancy for what the uncontroverted evidence established beyond a reasonable doubt.

The error in the instruction did not contribute to the verdict and was harmless.

*Lack of Consumer Firework Definition Instruction*

Ingham did not argue at trial that his beer-can explosive was a "consumer firework" that was exempt from the statutory definition of an "explosive," but on appeal he maintains that the trial court should have sua sponte instructed the jury on the definition of a consumer firework.

When an instruction has not been requested, the failure to give that instruction is reviewed for clear error if the instruction was legally and factually appropriate. Any such error is not reversible unless this court is firmly convinced that error affected the jury's verdict. *State v. Louis*, 305 Kan. 453, 462, 384 P.3d 1 (2016).

15

Instruction 10 included this language:

> "'Explosive' shall not include any legally obtained and transferred commercial explosive by licensed individuals and ammunition and commercially available loading powders and products used as ammunition, and consumer fireworks, as defined in 27 C.F.R. § 555.11, in effect on May 17, 2007, unless such consumer fireworks are modified or assembled as a device that deflagrates or explodes when used for a purpose not intended by the manufacturer."

The instruction did not provide the C.F.R. definition, which currently reads:

> "Consumer fireworks. Any small firework device designed to produce visible effects by combustion and which must comply with the construction, chemical composition, and labeling regulations of the U.S. Consumer Product Safety Commission, as set forth in title 16, Code of Federal Regulations, parts 1500 and 1507. Some small devices designed to produce audible effects are included, such as whistling devices, ground devices containing 50 mg or less of explosive materials, and aerial devices containing 130 mg or less of explosive materials. Consumer fireworks are classified as fireworks UN0336, and UN0337 by the U.S. Department of Transportation at 49 CFR 172.101. This term does not include fused setpieces containing components which together exceed 50 mg of salute powder." 27 C.F.R. § 555.11.

Ingham contends that the trial court, on its own motion, should have provided the C.F.R. definition because "there would be a real possibility that the jury would have reached a different verdict."

We are not convinced that the omission of the definition affected the jury's verdict. Ingham told police investigators that "he made firecrackers to attempt to blow up boulders" and "he was using the fireworks . . . to blow up rocks inside the cement mixer

16

to get the get the gold out of them." He argues on appeal that "he was trying to use fireworks, essentially to use the audible effect to break open rocks."

The facts as presented at trial do not support a theory that his beer-can bomb was a "consumer firework." First, he did not attempt to show that the device complied with the construction, chemical composition, and labeling regulations of the U.S. Consumer Product Safety Commission. Second, a beer can full of powder obviously contains more than 50 milligrams of powder; 50 milligrams is equivalent to 0.00176 ounces, or approximately one ten-thousandth of a pound. Third, although pressure waves and acoustic waves are both examples of mechanical longitudinal waves, it is a far-fetched argument that Ingham was attempting to extract gold from rocks by making a very loud noise. Fourth, the Kansas statute does not permit the fireworks exception for explosives "when used for a purpose not intended by the manufacturer." We are given no reason to believe that consumer fireworks manufacturers intend that their fireworks be used to disintegrate rocks, as opposed to the production of an audible effect, including whistling, as explained in the federal regulation.

Nothing in the record would have led the jury to believe that his beer-can explosive was a consumer firework, either in terms of construction or intended usage. Even if an instruction is legally appropriate when viewed in isolation, it must be supported by the particular facts of the case before the court. *State v. Plummer*, 295 Kan. 156, 161, 283 P.3d 202 (2012). We find no error in the district court's omission of the unrequested instruction.

*Cumulative Error*

Ingham finally argues that, even if this court finds that individual errors were harmless, the cumulative effect of those errors was prejudicial to his defense and warrants

17

reversal. When a party argues that the cumulative impact of alleged errors is so great that they result in an unfair trial, this court aggregates all the errors and, even if those errors individually would be considered harmless, analyzes whether their cumulative effect is so great that they collectively cannot be determined to be harmless. In undertaking such an analysis, this court reviews the entire record and exercises unlimited review. *Sean*, 306 Kan. at 993.

Although we note several errors arising in the course of Ingham's trial, we also note that the evidence against him, including his admissions to law enforcement that he did exactly what he was accused of doing, was overwhelming and uncontroverted. Ingham's defense consisted of arguing to the jury that he was an ordinary citizen who committed the acts at issue in the hope of finding some mineral wealth to help support his family. The choices for the jury were either to accept the undisputed evidence as true, apply the law, and convict Ingham, or to exercise its ability to nullify the statute and acquit him. See, e.g., *State v. Roeder*, 300 Kan. 901, 938, 336 P.3d 831 (2014) (defense theory permitted only two possible verdicts:  guilty as charged or acquittal based on jury nullification). The errors and assumed errors did not affect these two possible outcomes and, even taken in their cumulative effect, did not prejudicially affect the jury's verdict.

CONCLUSION

We find no grounds for reversal. The decision of the Court of Appeals is affirmed. Ingham's conviction is affirmed.

* * *

NUSS, C.J., concurring:  I would affirm Daron Ingham's conviction. But I depart from the majority's rationale regarding the motion in limine.

18

I agree with the dissent that the trial court erred in denying Ingham's motion in limine. This denial allowed the State's frequent references throughout the trial to the "I.E.D." that Ingham constructed out of a beer can packed with gunpowder readily available to Kansas residents who load their own firearms ammunition. Because of the United States' ongoing military involvement in Middle East conflicts for more than a decade, an I.E.D. is obviously associated with causing terrifying, i.e., disfiguring and disabling, injury—all too often resulting in death. In sum, whatever probative value its admission may have is clearly outweighed (under the wholly dissimilar facts of this case) by the potential for undue prejudice to Ingham. So I would hold no reasonable person would have allowed it—a conclusion which means the court abused its discretion. *State v. Page*, 303 Kan. 548, 555, 363 P.3d 391 (2015).

This error, coupled with other(s), means we apply a cumulative error test. *State v. Sean*, 306 Kan. 963, 993, 399 P.3d 168 (2017). But as the majority explains, collectively they are harmless. Slip op. at 18. In short, Ingham effectively (and repeatedly) admitted committing the offense of the criminal use of explosives. And he has not claimed his damaging admissions were false or involuntary. See *State v. Herbel*, 296 Kan. 1101, 1111-15, 299 P.3d 292 (2013) (constitutional error held harmless when defendant admitted to the underlying facts of the crime in separate statements to police and never challenged those statements as inaccurate or coerced); see also *Grossman v. State*, 300 Kan. 1058, 1062-63, 337 P.3d 687 (2014) (60-1507 motion properly denied because defendant would be unable to elicit evidence to overcome his express and repeated admissions of drug use in violation of his probation terms); *Sola-Morales v. State*, 300 Kan. 875, 889, 335 P.3d 1162 (2014) (essential fairness of trial not undermined by counsel's failure to call witness when defendant admitted firing fatal shot in homicide case and never recanted or otherwise suggested his statement was inaccurate). Moreover, Ingham's admissions were not only quite harmful, but they also were reinforced by

undisputed evidence. See *Sola-Morales,* 300 Kan. at 889 ("'Admissions against interest made by a party are the strongest kind of evidence . . . .'"); *Herbel*, 296 Kan. at 1113-14 (other evidence also corroborated defendant's damaging admissions).

\* \* \*

BILES, J., concurring:  I agree Daron Ingham's conviction must be affirmed. I differ from the majority opinion in that I would hold:  (1) the district court did not abuse its discretion in denying the motion in limine because that decision was not arbitrary, fanciful, or unreasonable—without going further into a prejudice analysis; (2) there was no error in giving the elements instruction on criminal use of explosives; and (3) there was no cumulative error.

*The motion in limine*

A district court's decision on a motion in limine involves a two-prong test. We apply a different standard when reviewing the court's ruling on a motion in limine, depending on which prong or what exact challenge was made to a motion in limine. See *Schlaikjer v. Kaplan*, 296 Kan. 456, 467, 293 P.3d 155 (2013). Under the test, to grant the motion, the district court must determine:  (1) the material or evidence in question will be inadmissible at trial; and (2) as opposed to a ruling during trial, a pretrial ruling is justified because (a) the mere offer or mention of the evidence at trial may cause unfair prejudice, confuse the issues, or mislead the jury; (b) the issue's consideration during trial might unduly interrupt and delay trial; or (c) a pretrial ruling may limit issues and save the parties time, effort, and cost in trial preparation. 296 Kan. at 467.

Ingham argues under the admissibility prong that the district court should have prohibited prior to trial the State's references during trial to emotionally charged terms

20

such as "bomb," "pipe bomb," "improvised explosive device," or "I.E.D." Ingham claims his pretrial motion should have been granted because those terms would be more prejudicial than probative. The district court's pretrial determination about this is subject to an abuse of discretion standard of review on appeal.

For my part, I agree with the majority's ultimate conclusion that no reasonable person would have granted the pretrial motion in limine. But that, of course, answers the question on appeal, so nothing more need be said. I would not engage in a prejudice analysis as the majority does.

Similarly, I note Justice Johnson, writing for the dissent, does not expressly key his abuse-of-discretion conclusion to the ultimate touchstone—whether the district court's ruling in advance of trial was (1) arbitrary, fanciful, or unreasonable; (2) based on an error of law; or (3) based on an error of fact. See *Kaelter v. Sokol*, 301 Kan. 247, 250, 340 P.3d 1210 (2015).

*Instruction on Elements of Criminal Use of Explosives*

Justice Rosen for the court holds the criminal use of explosives instruction was harmless error. I would hold there was no error, adopting the panel's rationale. 2015 WL 8175032, at *4-6.

*Cumulative Error*

I would assume only one error, i.e., the opinion testimony that the Coors Light can was an illegal improvised device, so a cumulative error analysis is inappropriate. See *State v. Love*, 305 Kan. 716, 737, 387 P.3d 820 (2017) ("[I]f there is no error or only a single error, cumulative error does not supply a basis for reversal.").

21

For these reasons, I believe the conviction must be affirmed.

STEGALL, J., joins the foregoing concurrence.

* * *

STEGALL, J., concurring:  Based on the arguments advanced by the parties, I agree with the court's judgment. I take this opportunity, however, to register my doubts about the statute under which Ingham was convicted.

Due process of law demands that a statute not be so vague, indefinite, or overbroad that it "fails to give ordinary people fair notice of the conduct it punishes." *Johnson v. United States*, 576 U.S. ___, 135 S. Ct. 2551, 2556, 192 L. Ed. 2d 569 (2015); see *State v. Kirby*, 222 Kan. 1, 3-4, 563 P.2d 408 (1977) (stating that the federal test for vagueness applies to vagueness challenges under Section 10 of the Kansas Constitution Bill of Rights). The most ubiquitous consequence of a vague law is its proclivity to "trap the innocent by not providing fair warning" of what the law demands. *Grayned v. City of Rockford*, 408 U.S. 104, 108, 92 S. Ct. 2294, 33 L. Ed. 2d 222 (1972).

But even more perniciously, a vague law "invite[s] arbitrary power." *Sessions v. Dimaya*, 584 U.S. ___, 138 S. Ct. 1204, 1223, 200 L. Ed. 2d 549 (2018) (Gorsuch, J., concurring). Vague laws give police officers, prosecutors, judges, and juries the authority to decide what the law is on an ad hoc basis—all without the political accountability inherent in the legislative process. See *Grayned*, 408 U.S. at 108-09. This, in turn, gives rise to doubts about whether such laws violate the doctrine of separation of powers. Vague laws "threaten to transfer legislative power to police and prosecutors, leaving them the job of shaping a vague statute's contours through their enforcement decisions." *Dimaya*, 138 S. Ct. at 1228 (Gorsuch, J., concurring).

22

Finally, an overbroad law may signal an unlawful exercise of the police power. See *City of Junction City v. Mevis*, 226 Kan. 526, 534, 601 P.2d 1145 (1979) (holding a city ordinance that made it a crime to carry a firearm within the city limits except at one's home or fixed place of business—meaning it would also be a crime to transport a lawfully purchased firearm from the place of purchase to one's home—was overbroad and an unconstitutional exercise of the police power). The government "cannot under the guise of the police power enact unreasonable and oppressive legislation or that which is in violation of the fundamental law." *Delight Wholesale Co. v. City of Overland Park*, 203 Kan. 99, 103, 453 P.2d 82 (1969). Indeed, the police power "extends only to such measures as are reasonable," and a law enacted pursuant to that power "'must be fairly designed to protect the public against the evils which might otherwise occur.'" *Junction City*, 226 Kan. at 534-35 (quoting *City of Baxter Springs v. Bryant*, 226 Kan. 383, Syl. ¶ 5, 598 P.2d 1051 [1979]).

The statute at hand, K.S.A. 2017 Supp. 21-5814(a)(1), criminalizes "[p]ossessing, manufacturing or transporting a commercial explosive" even if the person neither knows nor has any "*reason to know it is a commercial explosive*." (Emphasis added.) In turn, the statute defines a "commercial explosive" as including:

> "chemical compounds that form an explosive; a combination of chemicals, compounds or materials, including, but not limited to, the presence of an acid, a base, dry ice or aluminum foil, that are placed in a container for the purpose of generating a gas or gases to cause a mechanical failure, rupture or bursting of the container; incendiary or explosive material, liquid or solid; detonator; blasting cap; military explosive fuse assembly; squib; electric match or functional improvised fuse assembly; or any completed explosive device commonly known as a pipe bomb or a molotov cocktail." K.S.A. 2017 Supp. 21-5814(c)(2).

Consider the following scenario. A child observes the "Diet Coke and Mentos" phenomenon sweeping the internet. See Schneider, *Recipe for Success: Take Mentos, Diet Coke. Mix.*, New York Times (February 20, 2007) (describing how two comedians kicked off the Mentos and Diet Coke "geyser craze," in which the introduction of a Mentos candy to a 2-liter bottle of Diet Coke produces a chemical reaction resulting in rapid gas expansion that either ruptures the container or forcefully explodes through a small opening—and hilarity ensues). The child decides this looks like fun and proceeds to build exploding "Mentos bombs." Has he or she committed a felony by possessing a commercial explosive—*viz.*, a "compound[] . . . placed in a container for the purpose of generating a gas or gases to cause a mechanical failure, rupture, or bursting of the container"? What about the mere possession of a book of matches, or a cigarette lighter—both of which are clearly incendiary devices with "incendiary . . . material, liquid or solid"?

In an appropriate case, I would welcome briefing and argument on the question of whether this statute is too vague, indefinite, or overbroad to survive constitutional scrutiny.

* * *

JOHNSON, J., dissenting:  I disagree with the majority in several respects, albeit the common thread involves the State's use of the term "improvised explosive device" and its acronym, "I.E.D."

First, I take exception to the majority's cavalier disregard of the inflammatory connotation associated with the term, I.E.D. I especially disagree with the following declaration:

24

"Witnesses and counsel may use common words and phrases that accurately and correctly describe people, things, and situations, even if the words or phrases have connotative meanings broader than the meaning intended in the trial context. Witnesses and counsel are not required to tiptoe around such language, possibly inventing euphemisms to replace ordinary English usage." Slip op. at 7.

That rule is apparently newly cut from whole cloth, as it is not accompanied with any citation to authority. Manufacturing a new rule of law to support a result in one case can often have unintended consequences in later cases. More importantly, however, I submit that the new rule does not comport with established law. For instance, "gang" is a common word that accurately describes a group of people, yet State's witnesses and prosecutors are sometimes required to "tiptoe around such language" in criminal trials to avoid undue prejudice. See *State v. Peppers*, 294 Kan. 377, 391, 276 P.3d 148 (2012) ("The probative value of gang affiliation evidence must be weighed against its potential for prejudice."). Likewise, the common word, "killer," accurately and correctly describes a person who has murdered another human being, but we found that it was "clearly improper" for a prosecutor to use the term multiple times in closing argument to refer to the defendant in a murder trial. *State v. Miller*, 284 Kan. 682, 717, 163 P.3d 267 (2007).

The crime with which Ingham was charged proscribed possessing, manufacturing, or transporting a "commercial explosive." K.S.A. 2017 Supp. 21-5814(a)(1). The term, "improvised explosive device," is nowhere to be found in the criminal statute, including in its specific definition of "commercial explosive." The only "euphemisms" for commercial explosive contained in the statutory definition are "a pipe bomb or a molotov cocktail." K.S.A. 2017 Supp. 21-5814(c)(2).

The "common phrase" I.E.D. or improvised explosive device is associated with guerilla and insurgent activity towards the United States military. See *Improvised Explosive Device*, Encyclopedia Britannica, (April 28, 2015), available at

https://www.britannica.com/technology/improvised-explosive-device (Last visited November 8, 2018) ("IEDs have been the predominant weapon of insurgents in the Iraq War and the Afghanistan War, and, because of their low cost, ease of employment, and high effectiveness, they will continue to be the weapon of choice for guerrillas and insurgents for the foreseeable future."). The only probative value in using "improvised explosive device" as a euphemism for "commercial explosive" was to take advantage of the inflammatory connotation associated with I.E.D.s arising from their common use by terrorists. I would find that the district court abused its discretion in denying the defense's motion in limine to preclude the use of that term or its acronym.

The trial court compounded the adverse effect of denying the motion in limine by allowing a law enforcement officer (LEO) to testify that it was his "opinion that these legally obtained items were combined to make an illegal improvised explosive device." Slip op. at 8. That opinion made the repeated use of "improvised explosive device" and "I.E.D." by the prosecutor and the prosecution witnesses particularly damning for the defense. Calling the device an *illegal* improvised explosive device did not fit within the permissible parameters of lay opinion testimony, but instead did, in fact, both improperly state a legal conclusion on unlawfulness and invade the province of the jury by effectively telling it that the defendant was guilty. The majority's refusal to acknowledge that unfairness by simply assuming error—while intimating that it was not error—is simply untenable.

But the trial court was not finished tipping the scales of justice. As the majority grudgingly concedes, the jury instruction on the elements of the offense erroneously equated "improvised explosive device" with "commercial explosive." After the LEO opined that the device Ingham possessed was an illegal improvised explosive device, the trial court essentially told the jury that the defendant was guilty of possessing, manufacturing, or transporting a commercial explosive if he possessed, manufactured, or

26

transported an improvised explosive device. In the context of the entire trial, I cannot say that the instruction error was harmless.

Finally, I discern that the majority is engaging in impermissible judicial fact-finding, or mere supposition, to support its determination that a consumer firework definition instruction was not factually appropriate in this case. The evidence in the record does not support that "a beer can full of powder obviously contains more than 50 milligrams of powder; 50 milligrams is equivalent to 0.00176 ounces, or approximately one ten-thousandth of a pound." Slip op. at 17. Perhaps a court could take judicial notice of equivalent weights, but it cannot presume the weight of the powder that was actually contained in Ingham's beer can. Further, regardless of whether it is "a far-fetched argument that Ingham was attempting to extract gold from rocks by making a very loud noise," this is an appeal of a jury trial; it is not a bench trial over which we are presiding. Slip op. at 17. Therefore, it was the function of the jury, not us, to assess the weight and credibility to give to defense arguments. Finally, nothing in the record supports the majority's presumption "that consumer fireworks manufacturers [do not] intend that their fireworks be used to disintegrate rocks." Slip op. at 17. One might suppose that to be the case, but one does not invade the province of a jury based upon supposition. I would agree that the omission of an instruction defining consumer fireworks was not clearly erroneous, but I submit the factual record does not preclude it.

In short, I would reverse and remand for a fair trial.

LUCKERT and BEIER, JJ., join the foregoing dissenting opinion.

27