NOT DESIGNATED FOR PUBLICATION

No. 120,735

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JOSHUA J. HENSLEY,
*Appellant*.


MEMORANDUM OPINION

Appeal from Sedgwick District Court; BENJAMIN L. BURGESS, judge. Opinion filed April 10, 2020. Affirmed.

*Michelle A. Davis*, of Kansas Appellate Defender Office, for appellant.

*Matt J. Maloney*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.


Before BRUNS, P.J., MALONE and GARDNER, JJ.


PER CURIAM: Joshua Hensley appeals the district court's denial of his presentence motion to withdraw his plea. Hensley argues he showed good cause to withdraw his plea because his attorney misled him about the benefits of the plea, and he did not fairly and understandingly make the plea. Because the district court reasonably found that Hensley failed to show good cause to withdraw his plea, we affirm.

1

*Factual and Procedural Background*

The State charged Hensley with five counts of aggravated indecent liberties with a child, two counts of aggravated criminal sodomy, two counts of criminal sodomy, four counts of indecent liberties with a child, and two counts of aggravated incest. The charges arose from Hensley's alleged abuse of his stepdaughter over eight years. In August 2018, as part of a plea agreement, Hensley pleaded guilty to one count of aggravated indecent liberties, an off-grid felony, two counts of aggravated criminal sodomy, both off-grid felonies, and one count of indecent liberties, a level 5 felony. In return, the State agreed to dismiss the remaining counts, to dismiss a companion case, and to recommend a downward departure to the sentencing grid. The parties anticipated a total sentence of 425 months.

The plea hearing occurred on the day the trial was to begin. Hensley swore under oath that he had read and discussed with his attorney every part of the Acknowledgment of Rights and Entry of Plea, and that the answers he gave were true. The district court's plea colloquy included Hensley's constitutional rights, the plea agreement, the charges, and their sentences. Hensley confirmed he was satisfied with his counsel, Steven Mank, and was making his pleas freely and voluntarily. After the State and Hensley provided a factual basis for the plea, the district court accepted it.

Two weeks later, Hensley moved pro se to withdraw his plea. He argued Mank's representation had been "wholly ineffective and inadequate," Mank had coerced him into taking the plea, and he had not made the plea fairly. Accordingly, the district court appointed Hensley new counsel. New counsel filed a supplemental motion arguing:

- Mank incompetently represented Hensley because he was not prepared for trial;

2

- Mank misled Hensley about the benefit of the plea deal, as Hensley would likely die before being released;

- Hensley did not make the plea fairly or understandingly; and

- the factual basis for his plea was defective.

The district court held a hearing on the motion. The State first admitted a telephone call that took place right after Hensley's plea. In that call, Hensley informed his sister that he had taken the plea "just to end it" and "there was no choice." He explained to his sister the distinction between a determinate sentence and a life sentence and what options the district court could choose at sentencing. He also indicated he would have likely lost at trial if his daughter had testified.

Mank then testified about representing Hensley. In March 2018, when the district court appointed him, Hensley's case was already set for trial. Mank hired an investigator to help him and together they reviewed the discovery and contacted Hensley's previous attorney. After reviewing the case, the investigator tried to contact the victim and Hensley's wife, but the victim did not want to talk to the investigator.

Mank testified that he and Hensley had discussed trial strategy. Mank visited Hensley 17 times between his entry of appearance and the day of the trial. Given his investigation and conversations with the district attorney, Mank believed the victim would testify at trial and would request a lengthy sentence. Mank determined that attacking the victim's credibility would be their best strategy, given the State's burden of proof and the nature of the case. Mank also believed this would be a difficult case for two reasons. First, because the victim had seemed credible at the preliminary hearing when she incriminated Hensley. Second, because the State had corroborating evidence, including text messages between Hensley and the victim that incriminated Hensley, and an "apology" Hensley had made to the victim during a jail call.

3

Mank testified that he was prepared on the day of the trial. Yet, given the circumstances, he believed that a plea would be in Hensley's best interest. Although Hensley had originally rejected a plea offer and the State then rescinded it, Mank persuaded the State to make an offer on the morning of trial. Mank told Hensley he thought the on-grid sentence in the plea was Hensley's only hope of getting out of prison. Mank explained that with Hensley's jail credit and with potential good time credit he could be released earlier than 425 months. Mank testified that he ultimately left the decision to Hensley whether to take the plea.

Mank's investigator also testified, confirming much of Mank's testimony. She agreed that a trial would not be in Hensley's best interest and had told him so.

Hensley did not testify.

The district court denied Hensley's motion. Citing the three *Edgar* factors, the district court found that Hensley failed to show good cause to withdraw the plea. Instead, the district court found:

- Mank competently represented Hensley;
- Hensley was not misled, coerced, mistreated, or unfairly taken advantage of; and,
- Hensley entered the plea fairly and understandingly.

At sentencing, the district court followed the plea agreement. The sentence departed "to the grid" with consecutive terms, totaling 425 months in prison. The district court also awarded Hensley 919 days of jail-time credit.

Hensley timely appeals.

4

*Did the District Court Abuse its Discretion in Denying Hensley's Presentence Motion to Withdraw its Plea?*

Hensley first argues he showed good cause to withdraw his plea and the district court was unreasonable to find otherwise. First, Hensley believes, given his life expectancy, that he will die in prison, whether he received a determinate sentence or a life sentence; thus, Mank misled him about the benefits of the 35-year determinate sentence included in the plea agreement. Second, Hensley felt like he had no option but to take the plea; but had he gone to trial and received only one life sentence, he could have been released after 25 years. Thus, he asserts, his plea was not fairly and understandingly made.

*Standard of Review*

We review the denial of a presentence motion to withdraw a plea and the underlying determination that the defendant has not met his or her burden to show good cause under the abuse of discretion standard. *State v. Woodring*, 309 Kan. 379, 380, 435 P.3d 54 (2019). A judicial action constitutes an abuse of discretion if (1) it is arbitrary, fanciful, or unreasonable; (2) it is based on an error of law; or (3) it is based on an error of fact. *State v. Ingham*, 308 Kan. 1466, 1469, 430 P.3d 931 (2018). The party seeking to withdraw the plea—here, Hensley—bears the burden of establishing the district court's abuse of discretion. On appeal, we defer to the district court's fact-finding, declining to reweigh evidence or assess witness credibility. See *Woodring*, 309 Kan. at 380.

*Analysis*

A defendant may withdraw a plea for good cause and within the discretion of the district court at any time before sentencing. K.S.A. 2019 Supp. 22-3210(d)(1). In determining whether the defendant has shown good cause, the district court typically

5

considers the following three factors, commonly known as the *Edgar* factors: (1) whether competent counsel represented the defendant; (2) whether the defendant was misled, coerced, mistreated, or unfairly taken advantage of; and (3) whether the plea was fairly and understandingly made. *State v. Newman*, 311 Kan. 1215, 1218-19, 457 P.3d 923 (2020); *State v. Edgar*, 281 Kan. 30, 36, 127 P.3d 986 (2006). These factors do not form an exclusive list, and the district court may consider other factors when considering the existence of good cause. *State v. DeAnda*, 307 Kan. 500, 503, 411 P.3d 330 (2018). The district court considered the three *Edgar* factors here.

When, as here, the district court finds that the defendant failed to show good cause, it must deny the defendant's request to withdraw his plea. *State v. Brown*, 46 Kan. App. 2d 556, 562, 263 P.3d 217 (2011). To overturn the district court, a defendant "must establish that no reasonable person would have agreed with the district court's assessment of the three *Edgar* factors and its ultimate conclusions that [the defendant] failed to establish good cause to withdraw his plea." *State v. Reu-El*, 306 Kan. 460, 472, 394 P.3d 884 (2017).

First, Hensley argues he showed good cause because Mank misled him about any real benefit in the plea deal, "which called for a 35-year sentence for a 45-year old man." Hensley believes that Mank's statement that Hensley had "a shot at life" was misleading because "he did not [have a shot at life] given the lower 'life expectancy in prison.'" Mank admits that he told Hensley the plea was his "only hope at ever getting out."

The district court rejected this argument as speculative and found that nothing in the record shows that Mank or his investigator misled or coerced Hensley. Based on the evidence and the victim's willingness to testify, Mank reasonably believed Hensley would likely lose at trial. Mank's experience in that jurisdiction led him to believe that Hensley would receive at least two consecutive life sentences for his crimes. This would almost guarantee Hensley would die in prison. But, with a 425-month determinate

6

sentence, credit for time served, and good-time credit, Hensley could be released when in his 70's. Nothing about these statements was misleading or coercive. And Hensley's phone conversation with his sister showed that Hensley understood his situation and decided to take the plea deal. Thus the district court was reasonable in finding that Mank did not mislead Hensley. See *Williams v. State*, 197 Kan. 708, 711, 421 P.2d 194 (1966) ("Every man charged with crime is influenced by personal considerations which may later not appear valid to him, but psychological self-coercion is not the coercion necessary in law to destroy an otherwise voluntary plea of guilty.").

Nor was the benefit of Hensley's plea agreement illusory. Because of the plea agreement, the State dismissed 11 counts, and recommended a departure to the grid for the three remaining off-grid offenses, making Hensley eligible to earn 15% good-time credit. Had he gone to trial, the State would have argued for consecutive sentences on all seven off-grid offenses, making Hensley ineligible for parole for 175 years. And because of the corroborating evidence, Mank's assessment that Hensley would likely lose at trial and be sentenced to multiple life sentences seems most reasonable.

Second, Hensley contends he did not make his plea fairly or understandingly. True, Mank told Hensley he thought the plea was Hensley's "only hope at ever getting out of prison." Believing this statement, Hensley thought the plea was his only option. Yet, Hensley contends, he also had a hope of being convicted at trial and sentenced to only one life sentence. Thus, he claims the district court was unreasonable in finding he entered his plea fairly and understandingly.

Guilty pleas "'not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences.' *Brady v. United States*, 397 U.S. 742, 748, 90 S. Ct. 1463, 25 L. Ed. 2d 747 (1970)." *Edgar*, 281 Kan. at 36-37. The record shows that Hensley understood he had other options and entered his plea fairly and understandingly. In the Acknowledgment of

7

Rights and Entry of Plea, Hensley affirmed that, after discussing with Mank the potential defenses, his legal options, and his rights, he decided to accept the plea agreement. There, he also affirmed that he fully understood the plea and its consequences and was pleading in consideration of his best welfare and best interest. During the hearing, the district court informed Hensley that he had a right to a trial where the State would have to prove beyond a reasonable doubt that he committed these crimes. Hensley confirmed his understanding that by entering the plea he was waving the right to a trial and to hold the State to its burden. At the end of the plea colloquy, expressing the need for his plea to be free and voluntary, the district court again asked Hensley if he had any other questions. Hensley replied he did not.

Before taking the plea, Mank and Hensley formulated a trial strategy seeking to preclude the State from meeting its burden. Yet Mank candidly told Hensley he would likely lose at trial and would then face multiple consecutive life sentences. Hensley also showed in his phone conversation that he understood that one life sentence did not guarantee his release from prison, as that decision would be made by the parole board. Rather than take his case to trial, Hensley opted for a determinate sentence and to take the plea "just to end it."

The record confirms that Hensley's plea was a "knowing, intelligent act[] done with sufficient awareness of the relevant circumstances and likely consequences." *Edgar*, 281 Kan. at 36-37. The district court was not unreasonable in finding Hensley made his plea fairly and understandingly.

*Conclusion*

We find no abuse of discretion in the district court's denial of Hensley's motion to withdraw his plea. The district court reasonably found that Hensley failed to show good cause to withdraw his plea.

Affirmed.