NOT DESIGNATED FOR PUBLICATION

Nos. 122,640
122,641

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JAMES MICHAEL POTERBIN,
*Appellant*.


MEMORANDUM OPINION

Appeal from Wyandotte District Court; WESLEY K. GRIFFIN, judge. Opinion filed February 12, 2021. Affirmed.

Submitted by the parties for summary disposition pursuant to K.S.A. 2020 Supp. 21-6820(g) and (h).


Before GARDNER, P.J., SCHROEDER, J. and WALKER, S.J.

PER CURIAM: James Poterbin appeals his probation revocation and the district court's order to serve his 40-month prison sentence. We granted Poterbin's motion for summary disposition under Supreme Court Rule 7.041A (2020 Kan. S. Ct. R. 47). After reviewing the record, we find that Poterbin fails to show that the district court abused its discretion. Thus, we affirm.


*Factual and Procedural History*

In two separate cases, Poterbin pleaded guilty to driving under the influence—third offense, which occurred in October 2015, and to possessing marijuana with intent to

1

distribute, which occurred in April 2017. At a combined May 2018 sentencing for both cases, for driving under the influence (DUI), the district court sentenced Poterbin to 12 months in jail but granted 60 days of house arrest after serving 30 days in jail. For possession, the district court sentenced Poterbin to 40 months in prison but, under a downward dispositional departure, granted him 18 months of probation.

A year after sentencing, the district court found that Poterbin violated his probation by failing to pay court costs and by failing to submit clean urinary analyses (UAs). Six of his "dirty" UAs contained some combination of amphetamines, THC, cocaine, and alcohol. Two were diluted. As a result, the district court sanctioned Poterbin to 60 days in the county jail and extended his DUI supervision for 12 months.

During the hearing, the district court warned Poterbin that he would serve his prison sentence if he did not straighten up:

> "[District Court]: . . . I suggest that you do everything humanly possible to succeed on probation because if you come back and see me again . . . you're going to prison.
> "[Poterbin]: I understand.
> "[District Court]: You're going to serve a year, whatever's left of your year in the county jail and then you're going to go to DOC for 40 months. Forty. That's a long time. That should be great reasons to straighten up, get off the drugs and take care of your kids. Hadn't been so far."

In February 2020, Poterbin again appeared before the court on alleged probation violations. The State alleged that Poterbin had (1) negative contact with law enforcement and refused to cooperate in a pending federal kidnapping case; (2) failed to submit clean UAs—nine dirty UAs with amphetamines, cocaine, and THC; and (3) failed to pay his marijuana case court costs.

2

At the evidentiary hearing, Poterbin's probation officer testified that he based his motion to revoke on Poterbin's failure to submit clean UAs and his failure to refrain from negative law enforcement contact. He testified about Poterbin's dirty UAs but not about Poterbin's law enforcement contact.

In its journal entry, the district court found that Poterbin had (1) negative contact with law enforcement and refused to cooperate in a pending federal kidnapping case; (2) failed to submit clean UAs—nine dirty UAs with amphetamines, cocaine, and THC; and (3) failed to pay his marijuana case's court costs. It also revoked Poterbin's probation under "K.S.A. 22-3716(c)(7)," finding that the safety of the public would be jeopardized by his continued probation. At the hearing, the district court noted its dispositional departure.

The district court's ruling focused on Poterbin's inability to refrain from drug use. As a result, the district court found Poterbin was not amendable to probation:

> "And then we come to January 21st, 2020, when they filed a motion, but in the interim he signs a plan or contract zero tolerance. That lasted two days. Two days. Because he signed that—I'm sorry, let me rephrase that—evaluation was October 29th and two days later he tested positive. And then he tested positive again a short time later and again and again a total of five times.
> "Since we were last here in May of 2019, he's tested positive nine times, three different drugs. The key, because of the nature of the charges, would have been, as [Poterbin's attorney] has argued, treatment. He's been offered treatment for however many months, between May 10th, 2018 and today, and it's not been accomplished.
> "No doubt about it that failed UA's are part and parcel of addiction, but at some point in time there has to be some accountability on the part of a court system and a defendant.
> "At the time of the sentencing, everybody understood that treatment was vital. That probably was about the only legitimate departure factor that could be argued. That didn't work.

. . . .

"We've had treatment possibilities since May 10, 2018. As late as January 9th, 2020, he was still using. I can't ignore the facts of life. I actually think there should have been something brought when he tested positive six times, seven times, eight times, not nine times. I read some of these and think why weren't we here months ago?

"So based on the testimony, based on the arguments and based on my clear reading of what this court has provided and what Mr. Poterbin has been unsuccessful in—and I can't argue that it's tied to an addiction. There's no doubt about it. But at some point in time, the court has to follow its rules. That time is now.

"I find sufficient cause for the revocation. . . .

. . . .

"I'm making the finding after nine times testing positive after signing a zero tolerance compliance plan, amenability is out the window.

. . . .

". . . So the order will be that he will serve his underlying 40-month sentence."

Poterbin timely appeals.

*Analysis*

Poterbin claims the district court abused its discretion by revoking his probation. Poterbin argues the district court acted unreasonably because he had substantially complied with the terms of probation, was willing to participate in available treatment, and his violation showed his need for treatment. Poterbin admits, however, that a district court may revoke probation without first imposing intermediate sanctions if the judge makes a finding under K.S.A. 2016 Supp. 22-3716(c)(7)(A) that the defendant's continued probation would jeopardize public safety or would not serve his welfare.

Generally, once a defendant violates the conditions of probation, the decision to revoke probation rests in the district court's sound discretion. *State v. Gumfory*, 281 Kan. 1168, 1170, 135 P.3d 1191 (2006). A district court abuses its discretion when its action is

4

arbitrary, fanciful, or unreasonable; is based on an error of law; or is based on an error of fact. *State v. Ingham*, 308 Kan. 1466, 1469, 430 P.3d 931 (2018). On appeal, the party asserting the district court abused its discretion bears the burden of showing an abuse of discretion. *State v. Thomas*, 307 Kan. 733, 739, 415 P.3d 430 (2018).

K.S.A. 22-3716 governs the procedure for revoking a defendant's probation. Under this statute, Kansas employs a graduated sanctions scheme for defendants that violate the terms of their probation. For crimes before July 1, 2019, the district court had to impose either a 2-day or 3-day jail sanction and then a 120-day or a 180-day prison sanction before revoking a defendant's probation. See K.S.A. 2016 Supp. 22-3716(c)(1)(A)-(D); *State v. Dominguez*, 58 Kan. App. 630, Syl. ¶3, 473 P.3d 932 (2020) (new intermediate sanction scheme does not apply retroactively to probation violators who committed their crimes before the effective date of that amendment). The probation revocation statute grants the district court discretion to revoke probation without imposing intermediate sanctions in several circumstances. See, e.g., K.S.A. 2016 Supp. 22-3716(c)(9) (a district court may revoke a defendant's probation without imposing a sanction if the district court finds "with particularity" that the safety of the members of the public will be jeopardized or that the welfare of the offender will not be served by an immediate sanction).

Poterbin does not claim that the district court made an error of fact or an error of law. See *State v. Arnett*, 307 Kan. 648, 650, 413 P.3d 787 (2018) (an issue not briefed is considered waived or abandoned). He does not challenge the district court's finding that he violated his probation. Nor does he challenge the legal adequacy of the district court's public safety finding, permitting it to skip intermediate sanctions. See *State v. Duran*, 56 Kan. App. 2d 1268, 1272-77, 445 P.3d 761 (2019).

Instead, he argues solely that the district court's disposition was unreasonable given his willingness to participate in drug treatment, and "given that the violations

resulted from and demonstrate [his] need for treatment, and that he did not have an opportunity to begin proper treatment while on probation."

To support this argument, Poterbin must show that no reasonable person would have taken the district court's position. See *Thomas*, 307 Kan. at 739. But he fails to meet this burden. After the district court's stern warning, Poterbin continued his drug use and flouted the conditions of his probation, as shown by his many dirty UAs. The district court reasonably determined that probation was not rehabilitating Poterbin and that he was not amenable to probation. Poterbin had two years to use the treatment options the district court afforded him, but he failed to do so. Thus, Poterbin fails to show that no reasonable person would have revoked his probation and imposed a prison sentence.

Affirmed.