JAMES, J.
*457 Petitioner appeals from a judgment denying his petition for post-conviction relief wherein he alleged ineffective and inadequate assistance of counsel in providing advice as to the immigration consequences of entering a guilty plea to one count of first-degree online sexual corruption of a child, ORS 163.433. Petitioner contends that, under the Sixth Amendment to the United States Constitution, as interpreted by Padilla v. Kentucky , 559 U.S. 356, 364, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010), his criminal defense counsel was constitutionally ineffective in failing to inform petitioner, clearly and without equivocation, that conviction of the charged offense would result in his removal from the United States, and that defenses to that removal, such as the filing of a defensive asylum petition, would not be successful.[1] The post-conviction court denied relief, finding that criminal defense counsel provided effective assistance to petitioner such that, when petitioner pleaded guilty, "he was aware of the consequences of his plea." We affirm.
Under the Sixth Amendment to the United States Constitution, a petitioner seeking post-conviction relief must show that counsel's performance was deficient and the deficient performance caused actual prejudice to the defense. Strickland v. Washington , 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). We review the post-conviction court's proceedings for errors of law. Green v. Franke , 357 Or. 301, 312, 350 P.3d 188 (2015). "A post-conviction court's findings of historical fact are binding on this court if there is evidence in the record to support them." Id. "If findings are not made on all such facts, and there is evidence from which such facts could be decided more than one way, we will presume that the facts were decided in a manner consistent with the ultimate conclusion[.]" Ball v. Gladden , 250 Or. 485, 487, 443 P.2d 621 (1968).
At the time of his plea, petitioner was married to a United States citizen, and, as of May 1, 2014, had been granted conditional permanent resident (CPR) status.
*458 Pursuant to that status, petitioner was required to file a Petition to Remove Conditions on Residence (known as an I-751) within 90 days of the second anniversary of the grant of CPR status, i.e. , within 90 days of May 1, 2016. In that two-year period, the state charged petitioner with first-degree online sexual corruption of a child after he answered an online posting on Backpage.com. The posting was created in April, 2015, by a Eugene Police detective who posted four photographs of what appeared to be an underage teenage girl advertising online prostitution services.
Petitioner retained criminal defense counsel and engaged in negotiations with the state. Initially, petitioner and his counsel had *204 hoped to negotiate a misdemeanor charge, as opposed to a felony charge, under the belief that doing so would ameliorate the immigration consequences. Petitioner's counsel referred petitioner to an immigration attorney to advise him on immigration law. Criminal defense counsel explained at the post-conviction trial:
"[CRIMINAL DEFENSE COUNSEL]: At that-at this meeting on April 29th, I gave him the-what I typically do is just I go into their website and I print out all [immigration counsel's] contact information and I hand that to the client. So that-that was the day that I gave him that contact information.
"[PCR COUNSEL]: So that's within two weeks of your initial meeting with him, you're not only referring him to an immigration attorney but giving him contact information and how to get ahold of them?
"[CRIMINAL DEFENSE COUNSEL]: Yes.
"[PCR COUNSEL]: All right. And is the plan or is the arrangement that Mr. Daramola will go to the immigration attorney himself and work through that?
"[CRIMINAL DEFENSE COUNSEL]: Yes. Independently. That was the idea, that he-he would go independently and talk to them. And then after having that, I would be in contact with the immigration [attorney] after he had the appropriate releases[.]"
Petitioner met with immigration counsel at least twice; criminal defense counsel also spoke with immigration *459 counsel multiple times. As defense counsel testified in the post-conviction trial, in his first conversation with immigration counsel she informed him that ORS 163.433 would likely not be classified as an aggravated felony, but was a deportable crime involving moral turpitude (CIMT). A sub-sequent phone message indicated that immigration counsel had been unable to think of an alternative crime for defendant to plead to that would not be a CIMT.
Sometime later, immigration counsel provided petitioner, and criminal defense counsel, a letter opinion. In that letter, immigration counsel "analyzed the possible immigration consequences of [petitioner's] conviction of the charge of online sexual corruption of a child in the first degree." The next sentence of the letter advised petitioner: "[W]e believe your conviction of or plea of guilty to this charge would be a deportable offense. Upon conviction of this offense, you may be placed in removal proceedings." Immigration counsel went on to advise petitioner that the charge he faced was "not likely to be considered an 'aggravated felony' under the immigration laws and therefore you would not be subjected to automatic removal based on a conviction of that charge. However, it would most likely be considered a 'crime involving moral turpitude' for purposes of immigration law." The letter explained that being convicted "of a crime involving moral turpitude is grounds for a non-citizen's deportation from the United States." The paragraph concluded, "Accordingly, we believe your conviction of or plea of guilty to the felony charge of online sexual corruption of a child would render you subject to removal."
In concluding the letter, immigration counsel offered three possible alternative ways to remain in the United States. Counsel advised petitioner that the "consequences to your immigration status would be ameliorated if the crime you plead guilty to or are convicted of does not involve 'moral turpitude' or is not an 'aggravated felony' within the meaning of immigration law"; however, counsel warned that that decision would be up to the discretion of the prosecuting attorney. Another option the letter advised petitioner of was defending against the charge. Immigration counsel explained that:
*460 "[I]f you take your case to trial and prevail, you will not have been convicted of any crime, and therefore, you would face no adverse immigration consequences. This is a decision you would make with your defense attorney, taking into account the likelihood of prevailing at trial and the time and expense involved."
Finally, the letter advised petitioner of the possibility of seeking asylum. The letter stated:
*205 "Another possible way to avoid deportation would be by filing an application for asylum. In general, an applicant for asylum must establish that she or he possesses a well-founded fear of persecution upon returning to the country of origin, due to race, religion, nationality, membership in a particular social group or political opinion. 8 U.S.C. § 1101(a)(42)(A). Whether you have strong grounds for asylum would depend on the particular facts and circumstances of your case. We would be happy to discuss the asylum process and your unique circumstances at your convenience."
At the post-conviction trial, criminal defense counsel testified as to his various consultations with immigration counsel and his meetings with petitioner concerning advice from immigration counsel. At one of his meetings with petitioner, defense counsel specifically discussed asylum:
"[PCR COUNSEL]: So let's just stick with June 5th, then. You then-you spoke with [immigration counsel] on the 3rd. And then on the 5th, we're at the next page, you meet with [petitioner]. Then you-you talk about, I think, asylum again, perhaps.
"[CRIMINAL DEFENSE COUNSEL]: Yeah. The idea with asylum was not necessarily that he's going to be granted asylum, but my-what [immigration counsel] told me was that, once he applied for asylum, that would put a stay on removal proceedings. So it was another idea to help with the situation.
"[PCR COUNSEL]: Okay. This says about one or two years. What does that mean? That's about-that might be how long the delay would be?
"[CRIMINAL DEFENSE COUNSEL]: Oh. To-to get through the entire process of the asylum proceedings, I believe. Would be about-that would buy-essentially, at *461 this point we're kind of talking about buying more time. And so the-I think that these notes are talking about if we were [to] apply for asylum, that whole process, he would be in the process for one or two years of that."
In July, 2015, petitioner pleaded guilty to the charge. During the sentencing hearing, criminal defense counsel explained that
"[Mr. Daramola]'s here on a conditional residency permit, and he's married to an American woman, so we have been trying to resolve this in a way that won't impact that, and will not get him deported. If he is incarcerated for a term of greater than a year, there would be a mandatory hold on him as he goes through removal proceedings. Under this scenario with the fifteen-day jail sanction and the optional probation will allow him at least to be on probation if and when these removal proceedings start, to work through that process."
After entering his plea, petitioner filed a petition for post-conviction relief in which he claimed that he received inadequate assistance of counsel under the state and federal constitutions. In particular, petitioner contended that criminal defense counsel was constitutionally ineffective in failing to give accurate advice concerning his deportation. According to petitioner, his conviction rendered his removal "virtually certain" and, further, ORS 163.433 qualifies as a "particularly serious crime" (PSC)-a category of offense that disqualifies an individual from asylum consideration. Petitioner argued that, had he been given accurate advice regarding the likelihood of his removal, he would not have entered into a plea of guilty but he would have instead insisted on a jury trial. The post-conviction court denied relief, finding that criminal defense counsel provided adequate assistance to petitioner such that, when petitioner pleaded guilty, "he was aware of the consequences of his plea." This appeal followed, wherein the parties largely reiterate the arguments made before the post-conviction court.
Before deciding whether to plead guilty, a defendant is "entitled to the effective assistance of competent counsel."
*462 McMann v. Richardson , 397 U.S. 759, 771, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970) ; see also Strickland , 466 U.S. at 686, 104 S.Ct. 2052. In considering a plea, effective assistance of criminal defense counsel comes, in part, in providing a defendant necessary and accurate information upon which he can *206 make an informed cost-benefit analysis of the plea offer. Beginning with Immigration and Naturalization Service v. St. Cyr , 533 U.S. 289, 323, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001), the United States Supreme Court made clear that, for many noncitizen defendants avoiding removal proceedings, and "preserving the possibility" of avenues for relief from removal is "one of the principal benefits sought by defendants deciding whether to accept a plea offer or instead to proceed to trial." In St. Cyr , the Court noted that "competent defense counsel, following the advice of numerous practice guides" would advise a defendant as to the risks a plea posed for removal, and eligibility for relief from removal. Id. at 323 n. 50, 121 S.Ct. 2271.
Nine years later, in Padilla , the Court announced that the obligation to accurately advise a defendant of the immigration consequences of a plea was not collateral to the criminal defense attorney function but, rather, was integral to the Sixth Amendment right to effective assistance of counsel.
"We have long recognized that deportation is a particularly severe penalty, but it is not, in a strict sense, a criminal sanction. Although removal proceedings are civil in nature, deportation is nevertheless intimately related to the criminal process. * * * [W]e find it most difficult to divorce the penalty from the conviction in the deportation context. Moreover, we are quite confident that noncitizen defendants facing a risk of deportation for a particular offense find it even more difficult. See St. Cyr , 533 U.S. at 322, 121 S.Ct. 2271 ('There can be little doubt that, as a general matter, alien defendants considering whether to enter into a plea agreement are acutely aware of the immigration consequences of their convictions[.]').
" * * * The collateral versus direct distinction is thus ill suited to evaluating a Strickland claim concerning the specific risk of deportation. We conclude that advice regarding deportation is not categorically removed from the ambit of the Sixth Amendment right to counsel."
*463 Padilla , 559 U.S. at 365-66, 130 S.Ct. 1473 (internal quotation marks and some citations omitted).[2]
As the Court recently explained in Chaidez v. United States , Padilla took the expectations of criminal defense counsel announced in St. Cyr and gave them Sixth Amendment significance:
"[ St. Cyr ] stated what is common sense (and what we again recognized in Padilla ): A reasonably competent lawyer will tell a non-citizen client about a guilty plea's deportation consequences because '[p]reserving the client's right to remain in the United States may be more important to the client than any potential jail sentence.' * * * Courts had held to the contrary not because advice about deportation was insignificant to a client-really, who could think that, whether before or after St. Cyr -but because it concerned a matter collateral to the criminal prosecution. * * * Padilla decided that view was wrong."
Chaidez v. United States , 568 U.S. 342, 357, 133 S.Ct. 1103, 185 L.Ed.2d 149 (2013) (internal citation omitted; second brackets in original).
In bringing immigration consequences under the Sixth Amendment umbrella, Padilla acknowledged the difficulty in immigration law. The Court recognized that "[t]he importance of accurate legal advice for noncitizens accused of crimes has never been more important."
*207 Padilla , 559 U.S. at 364, 130 S.Ct. 1473. But, as the Court noted, there will "be numerous situations in which the deportation consequences of a particular plea are unclear or uncertain." Id. at 369, 130 S.Ct. 1473. In those situations, the obligations of criminal defense counsel are no different from when the criminal law is unclear or uncertain.
*464 "When the law is not succinct and straightforward * * * a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences. But when the deportation consequence is truly clear, as it was in this case, the duty to give correct advice is equally clear."
Id.
Of all the facets of the legal profession, only the criminal defense attorney is specifically enshrined in the constitution. The adequate and effective representation guaranteed by the Sixth and Fourteenth Amendments fall squarely on the shoulders of criminal defense counsel. As discussed, Padilla makes clear that advice of immigration consequences is part of-not collateral to-that Sixth Amendment guarantee. 559 U.S. at 369, 130 S.Ct. 1473. For the immigrant defendant, immigration consequences are as central to the defense function as case investigation, pretrial suppression, evaluating defenses, and calculating sentence exposure.
On appeal in this case, the state argues that criminal defense counsel cannot be found deficient because he referred petitioner to immigration counsel, and "was entitled to rely on the opinion of experts." To the extent the state seems to argue that bringing in immigration counsel per se renders criminal defense counsel's performance constitutionally adequate, the state misunderstands Padilla . If criminal defense counsel relies on outside consultation with immigration attorneys in educating herself or himself about immigration consequences, outside immigration counsel functions as a member of the defense team. Consultation with immigration counsel is a tool criminal defense counsel can use, but the involvement of immigration counsel does not obviate defense counsel's Sixth Amendment obligation to provide constitutionally adequate advice. As Padilla held, "when the deportation consequence is truly clear * * * the duty to give correct advice is equally clear." Padilla , 559 U.S. at 369, 130 S.Ct. 1473. That duty is defense counsel's .[3]
*465 In approaching any Padilla -based claim the analysis begins with the threshold question: Are the immigration consequences clear? When immigration consequences are clear, the advice a defendant receives-whether from criminal defense counsel directly, or through defense counsel's use of immigration counsel-must be equally clear. When the immigration consequences are unclear, criminal defense counsel must only apprise the defendant of the "risk of adverse immigration consequences." Padilla , 559 U.S. at 369, 130 S.Ct. 1473.
Applying that approach to this case, we begin first with the claim that counsel's advice as to removal was equivocal when, in fact, removal was a certainty. Specifically, counsel advised:
"As described in more detail below, we believe your conviction of or plea of guilty to this charge would be a deportable offense. Upon conviction of this offense, you may be placed in removal proceedings. However, it is at the discretion of Immigration Counsel to decide whether or not to place someone in removal proceedings."
After Padilla , courts are in general agreement that when the immigration consequences are clear, advice laden with language that softens or clouds the certainty of the inevitability of the outcome falls below the *208 standard for performance. See, e.g. , United States v. Bonilla , 637 F.3d 980, 984 (9th Cir. 2011) (holding that "[a] criminal defendant who faces almost certain deportation is entitled to know more than that it is possible that a guilty plea could lead to removal; he is entitled to know that it is a virtual certainty").
The Ninth Circuit's decision in United States v. Rodriguez-Vega is instructive. In that case, at the plea hearing, the magistrate informed the petitioner that "potentially you could be deported or removed, perhaps ." 797 F.3d 781, 785 (9th Cir. 2015) (emphases in original). In addition, defense counsel indicated to the petitioner that "even though this is *466 a misdemeanor, there is a high likelihood that she'll still be deported. It's still probably considered an aggravated felony for purposes of immigration law." Id . (emphasis in original).
In considering the petitioner's post-conviction claims for ineffective assistance of counsel, the district court denied relief, reasoning counsel's "duty [was] satisfied by his statement prior to Rodriguez-Vega's guilty plea that she faced a 'potential' of removal, and by his statement at the sentencing hearing that she faced a 'high likelihood' of removal." Id . at 786.
The Ninth Circuit reversed, holding the equivocal language fell below the standards for adequate assistance of counsel:
"Accordingly, we hold that Rodriguez-Vega's counsel was required to advise her that her conviction rendered her removal virtually certain, or words to that effect. * * *
"That Rodriguez-Vega might theoretically avoid removal under the family member exception for first-time offenders, see 8 U.S.C. § 1101(a)(43)(N), by receiving withholding of removal, see 8 U.S.C. § 1231(b)(3), or by qualifying for relief under the Convention Against Torture ('CAT'), see 8 C.F.R. § 1208.16(c), does not alter our conclusion that on the record before us her removal was virtually certain."
Id. at 786-87 (footnote omitted).
The problem for petitioner in this case on this point, however, is that he has failed to establish that First-Degree Online Sexual Corruption of a Child, ORS 163.433, is a crime for which the immigration consequences are, in fact, virtually certain. At his post-conviction trial, petitioner offered testimony by an immigration attorney (Larsson) that it was "virtually certain" that ORS 163.433 would be found to be an "aggravated felony" under 8 USC section 1101(43). Petitioner relies on that testimony on appeal to argue that ORS 163.433 is an aggravated felony, and therefore subject to mandatory removal. But whether a state criminal conviction constitutes an aggravated felony under the Immigration and Nationality Act (INA) is not a question of fact, it is a question of law. It is not clear on the face of 8 USC section 1101(43) that ORS 163.433 would qualify as an aggravated *467 felony, and petitioner has pointed us to no authority, either by appellate court, or Board of Immigration Appeals (BIA), holding ORS 163.433 to be an aggravated felony. Given that this appears to be an open question of law, the immigration consequences were not clear. Thus, counsel's advice that "[u]pon conviction of this offense, you may be placed in removal proceedings" meets the standard for counsel as expressed in Padilla that "[w]hen the law is not succinct and straightforward * * * a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences." 559 U.S. at 369, 130 S.Ct. 1473.
We next turn to petitioner's claim that counsel affirmatively misadvised him regarding the availability of asylum as a defense to deportation. That argument raises the question of whether, under Strickland , as applied by Padilla , the constitutional obligation of defense counsel is limited to advice solely about removability, or does that standard encompass broader immigration consequences such as relief from removal and asylum. There is certainly support for the proposition that Padilla extends beyond simple removability. As discussed, Padilla built upon St. Cyr , and St. Cyr expressly called for "competent defense counsel" to preserve eligibility for relief from removal. St. Cyr , 533 U.S. at 323 n. 50, 121 S.Ct. 2271. Defensive *209 asylum applications are precisely one such relief from removal.
Other courts have considered Padilla 's scope and concluded that the role of defense counsel extends beyond mere removability to broader immigration consequences. As the Iowa Supreme Court recently noted:
"It must be observed that deportation is a broad concept, and the adverse immigration consequences of a criminal conviction to a noncitizen under the immigration statute are not limited to removal from this country. In addition to removal from the country, the immigration statute also carries consequences associated with removal, such as exclusion, denial of citizenship, immigration detention, and bar to relief from removal."
Diaz v. State , 896 N.W.2d 723, 729 (Iowa 2017) ; see also *468 United States v. Nuwintore , 696 Fed Appx 178, 179 (9th Cir. 2017) (finding ineffective counsel in "neglecting to mention that even though [defendant] might avoid actual removal, he would be charged with removability and suffer a loss of his asylum status"). However, that conclusion is not universal. See, e.g. , Rosario v. State , 165 So.3d 672, 673 (Fla. 2015) (finding Padilla does not require advice on "[t]he possibility for an adjustment in status"); Garcia v. State , 425 S.W.3d 248, 260 (Tenn. 2013) (finding Padilla does not require advice on "future eligibility to immigrate legally to the United States").
Ultimately, however, we need not decide that issue here because, even assuming Padilla reaches advice concerning asylum eligibility, petitioner has not shown that counsel's advice was deficient. Petitioner advances two arguments. First, that his conviction constituted a PSC, rending him ineligible for asylum. Second, and alternatively, that counsel had no good faith belief petitioner would be eligible for asylum because he had no belief that petitioner was fearful of returning to his country of origin-a necessary prerequisite to an asylum application.
As to the first argument, again, it is not clear on the face of 8 USC section 1158(b)(2)(B)(i) that ORS 163.433 would qualify as a PSC, and petitioner has provided us no authority from either an appellate court, or the BIA, where ORS 163.433 has been found to constitute a PSC. The case cited by the parties, Morales v. Gonzales , 478 F.3d 972, 975 (9th Cir. 2007), abrogated on other grounds by Perez-Palafox v. Holder , 744 F.3d 1138 (9th Cir. 2014), concerned a conviction for "communication with a minor for immoral purposes under section 9.68A.090 of the Revised Code of Washington." While that statute is similar to ORS 163.433, Morales expressly left unanswered the question of whether the Washington statute qualified as a PSC. Id. at 982. Here, as above, the immigration consequences are unclear. Therefore, counsel's description of asylum as "[a]nother possible way to avoid deportation" is the equivalent of advice about "risk" Padilla countenances when the consequences are unclear.
Petitioner's second argument fails based on the factual record before us. Petitioner contends that counsel had *469 no reasonable belief that petitioner feared returning to his country of origin, and, thus, he could not advise petitioner that asylum was a potential relief from removal. However, the record does not establish that the letter was the only advice as to asylum provided. To the contrary, it establishes the converse. Counsel testified that, after the letter , he advised petitioner that asylum was not a viable defense. According to defense counsel, "The idea with asylum was not necessarily that he's going to be granted asylum," rather that asylum "would put a stay on removal proceedings." He concluded that "we're kind of talking about buying more time." Given the record in this case, we conclude that the post-conviction court did not err in concluding that counsel adequately advised petitioner.
Affirmed.

Petitioner advances an argument under the Oregon Constitution that we reject without discussion.

There is a wide array of collateral consequences from criminal conviction apart from immigration, for example, exclusion from government assisted housing, ineligibility for employment opportunities, student loan availability, and various types of employment licenses. See, e.g ., Michael Pinard, Reflections and Perspectives on Reentry and Collateral Consequences , 100 J. Crim. L. & Criminology 1213, 1218 (2010). Whether other "collateral" consequences of criminal conviction also fall under the Sixth Amendment is an issue Padilla expressly left unresolved. Padilla , 559 U.S. at 365, 130 S.Ct. 1473, ("We, however, have never applied a distinction between direct and collateral consequences to define the scope of constitutionally 'reasonable professional assistance' required under Strickland * * *. Whether that distinction is appropriate is a question we need not consider in this case because of the unique nature of deportation.").

Under the same reasoning, it is well settled that the court cannot substitute for defense counsel's obligations. See, e.g. , Padilla , 559 U.S. at 371, 130 S.Ct. 1473 ("It is quintessentially the duty of counsel to provide her client with available advice about an issue like deportation and the failure to do so 'clearly satisfies the first prong of the Strickland analysis.' " (quoting Hill v. Lockhart , 474 U.S. 52, 62, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985) (White, J., concurring) ) ); United States v. Urias-Marrufo , 744 F.3d 361, 369 (5th Cir. 2014) ("It is counsel's duty, not the court's, to warn of certain immigration consequences, and counsel's failure cannot be saved by a plea colloquy.").