Argued and submitted May 3, 2018, affirmed March 18, petition for review denied August 27, 2020 (366 Or 826)

MIGUEL MADRIGAL-ESTRELLA,
*Petitioner-Appellant,*

*v.*

STATE OF OREGON,
*Defendant-Respondent.*

Washington County Circuit Court
C160056CV; A163556

463 P3d 23

Petitioner, a citizen of Mexico living in the United States without legal immigration status, pleaded guilty and was convicted of one count of driving under the influence of intoxicants, ORS 813.010. Following his conviction, petitioner unsuccessfully sought post-conviction relief. Relying on *Padilla v. Kentucky*, 559 US 356, 130 S Ct 1473, 176 L Ed 2d 284 (2010), petitioner argued that that his trial counsel was constitutionally ineffective under the Sixth Amendment to the United States Constitution for failing to adequately inform him of the immigration consequences of his guilty plea. The post-conviction court denied relief. Petitioner appeals, assigning error to that ruling. *Held*: The post-conviction court did not err in denying relief. Petitioner failed to establish that the immigration consequences of his plea were "clear and easily ascertainable" within the meaning of Padilla. As such, trial counsel only had to advise petitioner that his plea might carry adverse immigration consequences, at which point it was for petitioner to decide whether to seek specific immigration advice before entering the plea. The record is sufficient to establish that petitioner was advised that a guilty plea might have immigration consequences.

Affirmed.

Linda Louise Bergman, Senior Judge.

Blake Doré argued the cause for appellant. Also on the brief was Doré Law Firm.

Ryan Kahn, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before DeHoog, Presiding Judge, and Egan, Chief Judge, and Aoyagi, Judge.*

_____

\* Egan, C. J., *vice* Hadlock, J. pro tempore.

AOYAGI, J.

Affirmed.

**AOYAGI, J.**

Petitioner pleaded guilty and was convicted of one count of driving under the influence of intoxicants (DUII), ORS 813.010. He unsuccessfully petitioned for post-conviction relief, asserting that his trial counsel was constitutionally inadequate and ineffective for failing to (1) adequately inform him of the immigration consequences of his guilty plea, (2) adequately investigate the case, and (3) move to suppress evidence. On appeal, appellant raises three assignments of error that correspond to those three issues. We reject the second and third assignments of error,[1] write only to address the first assignment of error, and, ultimately, affirm.

## STANDARD OF REVIEW

We review the denial of post-conviction relief for errors of law. *Green v. Franke*, 357 Or 301, 312, 350 P3d 188 (2015). "A post-conviction court's findings of historical fact are binding on this court if there is evidence in the record to support them." *Id.* "If findings are not made on all such facts, and there is evidence from which such facts could be decided more than one way, we will presume that the facts were decided in a manner consistent with the [trier of fact's] ultimate conclusion[.]" *Ball v. Gladden*, 250 Or 485, 487, 443 P2d 621 (1968).

## FACTS

Petitioner is a citizen of Mexico who, in 2013, was living in the United States "without legal status." In late November 2013, he backed his car into another car in a

---

[1] Petitioner's second assignment of error pertains to trial counsel's alleged failure to obtain and view a police video recording. We agree with the post-conviction court that petitioner failed to establish prejudice, regardless of whether trial counsel was inadequate or ineffective in that regard. *See Sproule v. Coursey*, 276 Or App 417, 421, 367 P3d 946 (2016) (a post-conviction "petitioner has the burden to prove both inadequacy and prejudice by a preponderance of the evidence"). In his third assignment of error, petitioner makes four distinct arguments as to why trial counsel should have filed a motion to suppress evidence. We agree with the state that not all competent attorneys would have moved to suppress and that the post-conviction court did not err in denying relief. To the extent that petitioner suggests in passing that all competent attorneys would have at least discussed with petitioner the possibility of filing a motion to suppress, perhaps regardless of the likelihood of success, that argument is undeveloped, so we do not consider it. *See Bazzaz v. Howe*, 262 Or App 519, 529, 325 P3d 775 (2014) (declining to address an undeveloped argument).

parking lot, which led to his being arrested and charged with DUII, ORS 813.010, and failure to perform the duties of a driver, ORS 811.700. At the time, petitioner was in a diversion program on an earlier DUII charge and was on release from United States Immigration and Customs Enforcement (ICE) detention with a $9,000 bond. When he was arrested on the second DUII, he was jailed and placed on an "immigration hold."[2]

In early January 2014, petitioner and the state entered into a plea agreement, under which petitioner agreed to plead guilty to the DUII count and the state agreed to dismiss the other count. Petitioner's plea agreement expressly identified immigration consequences as a "significant consequence" of pleading guilty:

> "12. In addition to the sentence imposed, I understand that there are other significant consequences if I enter a 'Guilty' or 'No Contest' plea, including, but not limited to:
>
> " ☒ If I am not a United States citizen, deportation/removal, exclusion from future entry into the United States or denial of naturalization[.]"

(Underlining in original.) Immigration consequences were the first of nine potential consequences listed on the pre-printed form, only three of which were marked on petitioner's plea petition.

Petitioner initialed each page of the plea petition and signed his full signature on the last page. Petitioner's court-appointed counsel also signed a "Certificate of Counsel," attesting, among other things, that he had "personally examined" and "explained" to petitioner all of the

---

[2] "Immigration hold" is another term for "immigration detainer." Christine M. G. Davis, Annotation, *Immigration Detainers or Holds Issued Pursuant to 8 C.F.R. § 287.7*, 10 ALR Fed 3d Art I, § 1 (2016). When a noncitizen is in the custody of a federal, state, or local law enforcement agency, an authorized immigration officer may give notice to the agency that the Department of Homeland Security seeks custody of the person "for the purpose of arresting and removing" him or her. *Id*. § 2. If the law enforcement agency "informs ICE that [the person] is in custody on nonimmigration related charges, ICE may issue a detainer requesting that the law enforcement agency hold the individual for up to 48 hours, not including weekend days and holidays, beyond the time that the detainee would otherwise be released in order to allow ICE to assume custody, if it chooses to do so." *Id.* "The immigration detainer has become the princip[al] mechanism for ICE to obtain custody over suspected immigration violators in the custody of other law enforcement officials." *Id.*

provisions of the plea agreement and had explained to petitioner "the maximum penalty and other consequences of entering a guilty or no contest plea, including possible immigration consequences."

Petitioner's plea hearing was held on January 10, 2014. A Spanish interpreter was present to translate for petitioner. The trial court discussed terminating probation and diversion and accepting a plea on the first DUII charge. Regarding the second DUII charge, the court noted that petitioner was on an "ICE hold." Petitioner's trial counsel confirmed that that was correct and said that petitioner had been held on the current charges since late November. Trial counsel said that they had been "seeking immigration attorney consultation, as well as debating trial, and now he's here * * * to take accountability on all of it." The court asked counsel how he thought it was "going to go," to which counsel responded that he "obviously had never given guarantees" but that petitioner "certainly will go to Tacoma" (where there is an ICE detention center), which is where he had gone previously, and that he would have to wait for a bond hearing, which would take about three weeks. Asked if he had any sense whether petitioner would be deported on the second DUII, counsel said that he did not have much of a sense because he did not have any "direct immigration experience," but that his "sense from the immigration attorney is that [petitioner] has a number of ties here, so he may have an opportunity to bond out and fight this case for an extended period of time."

The court asked petitioner if he had anything to say about the first DUII. Petitioner provided some personal background. He described phone calls from the Mexican "mafia" threatening to kidnap his family members in Mexico. He said that he used alcohol to cope with depression about the situation. Trial counsel noted at that point that "there may be some asylum issues."[3] The trial court said that it

---

[3] In a footnote in his opening brief, petitioner asserts that his trial counsel "made comments to [the trial judge] that [petitioner] was seeking asylum" when, in fact, petitioner "does not qualify for, and has never sought, asylum." Petitioner does not provide a record citation for that assertion, and we have not found any instance of trial counsel telling the trial court that petitioner was seeking asylum.

was thinking the same and that petitioner obviously would want to tell his story to his immigration attorney. Counsel responded, "I believe there has already been extensive conversations from the original DUII—always more difficult whenever they go back into custody."

After making some additional remarks, the trial court sentenced petitioner on the first DUII to time served, fines, fees, driver's license suspension, and two years of enhanced bench probation, including the "immigration package." On the latter point, the court explained that, if petitioner "[was] not deported," he would have to report to Washington County evaluation services within two days of leaving Tacoma, and, if he "was deported," he could not reenter the United States illegally and would have to report to an ICE facility if he reentered.

Regarding the second DUII charge, the trial court asked petitioner if he had had sufficient time to discuss the plea agreement with his attorney, and petitioner said "yes." Petitioner also said "yes" when asked if he was satisfied with the help and advice that he had received from counsel. The court heard and accepted the factual basis for the plea. Petitioner's trial counsel requested that, when the court set a payment schedule on fines and fees, it take into account that petitioner "could have potentially an extended stay in Tacoma." The court then accepted the plea and imposed a similar sentence on the second DUII as the first DUII, including the "immigration package." The court asked petitioner if he had "any questions about what happened to [him] this afternoon." Petitioner responded "no" and added that he thought "everything was clear." Petitioner thanked the court, and the hearing ended.

Two years after his conviction, petitioner filed a petition for post-conviction relief, asserting inadequate and ineffective assistance of trial counsel under Article I, section 11, of the Oregon Constitution, and the Sixth Amendment to the United States Constitution. As relevant here, petitioner alleges that trial counsel failed to adequately inform him of the immigration consequences of his guilty plea, failed to advise him that his guilty plea would have immigration consequences, and did not research federal immigration law

or consult with an immigration attorney to correctly advise him about the immigration consequences of pleading guilty to a second DUII.

Petitioner's post-conviction trial was held in 2016. Neither party offered live testimony. Petitioner relied on three affidavits—two of his own and one of an immigration attorney named Carter—while the state submitted an affidavit from petitioner's trial counsel. We summarize the relevant portions of each of those affidavits.

Petitioner attested as follows. He met with trial counsel three times. He asked trial counsel to speak with his immigration attorney, but trial counsel declined, saying that he "had nothing to do with immigration." Petitioner heard from his wife that his immigration attorney had tried unsuccessfully to get in touch with trial counsel several times. Petitioner did not speak with his immigration attorney while he was in jail. Trial counsel never gave petitioner any immigration-related advice. According to petitioner, on the day of his plea hearing, trial counsel arrived late at court, "had not reviewed [the] plea petition before court," "reviewed the plea petition with [petitioner] very quickly with an interpreter," "did not discuss all the parts of the petition," and "did not read or discuss section 12 with [petitioner]." According to petitioner, the interpreter did not read the petition "word for word," and petitioner does not read English.

Carter, who identified herself (in 2016) as petitioner's immigration attorney, attested as follows. Petitioner is facing deportation. He initially came to ICE's attention while in jail on the first DUII, and the second DUII "caused him to return to the attention of ICE." Under "the current priorities for enforcement and detainment," petitioner "would not be prosecuted as a deportable alien if he did not have the DUII convictions." "Competent immigration counsel would realize that the second DUII would trigger detainment and charges," and "[t]his information would be available by consulting with a competent immigration attorney." In Carter's view, any immigration advice that trial counsel gave to petitioner was insufficient unless it accounted for "the current immigration enforcement priorities." "Those immigration

consequences are clear and are easily ascertainable by con-
sulting enforcement priority memos and consulting with a
practicing immigration attorney." Informing petitioner only
that he "may" be deported "is unhelpful at best and would not
explain the immigration consequences clearly." According
to Carter, a hit-and-run charge (*i.e.*, failure to perform the
duties of a driver) "is often worse than a DUII." But "DUIIs
affect good moral character, not as a complete bar, but as a
mark on discretion," and a second DUII "oftentimes means
a denial of discretion." Because petitioner is "without legal
status," he "will certainly be deported," unless he can adjust
his status.

Petitioner's trial counsel attested as follows. The
court appointed him on December 2, 2013, to represent
petitioner. Trial counsel had Moore, who speaks Spanish,
meet with petitioner for a preliminary interview that same
day. Moore discussed with petitioner, among other things,
his immigration hold. Trial counsel personally met with
petitioner on December 16, with an interpreter, to discuss
the case. Petitioner told him at the December 16 meeting
that he had an immigration attorney named Steven Miller.
That led to Moore contacting petitioner's wife, regarding
contact with Miller. Trial counsel met again with petitioner
on January 7, with an interpreter, and reviewed the plea
petition with him. At that time, trial counsel understood
that petitioner had been in contact with his immigration
attorney, Miller, "regarding the consequences of enter-
ing a plea." Petitioner entered the plea three days later,
on January 10, in court, with a court-certified interpreter
present.

The post-conviction court denied relief, making the
following findings regarding the immigration claim:

"[Petitioner] was already under ICE release at the time of
his arrest. Trial [attorney] knew [petitioner] had an immi-
gration attorney for that matter and that [petitioner's] wife
was in contact with that lawyer. Although it is proven that
trial attorney had no contact with the immigration attor-
ney, there is an absence of proof that [petitioner] had not
gotten advice from that immigration attorney. There is
no affidavit addressing that issue—no affidavit from [the]
immigration attorney or [petitioner's] wife and [petitioner]

does not directly address it. It is not unreasonable for the trial attorney to expect [petitioner] or his wife to consult with that expert who was already aware of [petitioner's] status and legal problems and for the trial attorney to rely on the expertise of that expert. The plea petition addresses immigration problems, and there was a discussion on the record. The attorney says that [petitioner] has discussed ICE issues with his immigration attorney."

Petitioner appeals from the resulting judgment. He argues that the "post-conviction court erred in holding that petitioner was adequately informed of the immigration consequences of pleading guilty when trial counsel did not inform [p]etitioner of the immigration consequences of his plea but instead assumed [that] he obtained that information elsewhere."

## ANALYSIS

A petitioner is entitled to post-conviction relief when he establishes a "substantial denial" of a state or federal constitutional right that "rendered the conviction void." ORS 138.530(1)(a). In this case, petitioner claims that he was denied his rights to adequate assistance of counsel under Article I, section 11, of the Oregon Constitution and effective assistance of counsel under the Sixth Amendment to the United States Constitution. Those standards are "functionally equivalent," with both requiring "adequate performance by counsel concerning the functions of professional assistance which an accused person relies upon counsel to perform on his behalf." *Montez v. Czerniak*, 355 Or 1, 6, 322 P3d 487, *adh'd to as modified on recons*, 355 Or 598, 330 P3d 595 (2014) (internal quotation marks omitted). However, for reasons to be explained shortly, we limit our discussion to the Sixth Amendment. Under the Sixth Amendment, petitioner had to prove that, considering all the circumstances, his trial counsel's "identified acts or omissions were outside the wide range of professionally competent assistance" and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 US 668, 690-94, 104 S Ct 2052, 80 L Ed 2d 674 (1984).

In the seminal case of *Padilla v. Kentucky*, 559 US 356, 130 S Ct 1473, 176 L Ed 2d 284 (2010), the United States Supreme Court recognized for the first time that the Sixth Amendment requires criminal defense attorneys to advise their clients about immigration consequences—to a greater or lesser degree, depending on the circumstances. The petitioner in *Padilla* was a lawful permanent resident of the United States who faced deportation after pleading guilty to drug distribution. *Id.* at 359. In a Kentucky post-conviction proceeding, he alleged that his trial counsel had "not only failed to advise him of this consequence prior to his entering the plea, but also told him that he 'did not have to worry about immigration status since he had been in the country so long.'" *Id.* He alleged that he would have gone to trial but for that incorrect advice. *Id.*

Applying the Sixth Amendment, the Supreme Court agreed with the petitioner "that constitutionally competent counsel would have advised him that his conviction for drug distribution made him subject to automatic deportation." *Id.* at 360. In reaching that conclusion, the Supreme Court recognized the specialized nature of immigration law but emphasized that, in *Padilla*, the "terms of the relevant immigration statute [were] succinct, clear, and explicit in defining the removal consequences for [the petitioner's] conviction," such that the petitioner's "counsel could have easily determined that his plea would make him eligible for deportation simply from reading the text of the statute." *Id.* at 368. "[W]hen the deportation consequence is truly clear, as it was in [*Padilla*], the duty to give correct advice is equally clear." *Id.* at 369. By contrast, the Supreme Court explained, when "the deportation consequences of a particular plea are unclear or uncertain," a criminal defense attorney's duty "is more limited." *Id.* "When the law is not succinct and straightforward ***, a criminal defense attorney need do no more than advise a non-citizen client that pending criminal charges may carry a risk of adverse immigration consequences." *Id.*

As described by the Oregon Supreme Court, "[a]fter *Padilla*, if the immigration consequences of pleading guilty to certain crimes are 'truly clear,' *** then the

Sixth Amendment requires defense counsel to advise their clients not merely that a conviction 'may result' in adverse immigration consequences but that deportation and other adverse immigration consequences will be 'virtually inevitable' as a result of the plea." *Chavez v. State of Oregon*, 364 Or 654, 661, 438 P3d 381 (2019). Conversely, "[w]hen the immigration consequences are unclear, criminal defense counsel must only apprise the defendant of the 'risk of adverse immigration consequences.'" *Daramola v. State of Oregon*, 294 Or App 455, 465, 430 P3d 201 (2018), *rev den*, 364 Or 723 (2019) (quoting *Padilla*, 559 US at 369); *see also Gutale v. State of Oregon*, 364 Or 502, 504, 435 P3d 728 (2019) (describing *Padilla* as "requiring counsel to inform a criminal defendant of clear immigration consequences of a plea and, where consequences are not clear, to advise that [a] plea may carry a risk of adverse immigration consequences"). Because the Sixth Amendment now requires more of defense counsel than Article I, section 11, with respect to providing advice about immigration consequences, we limit our discussion to the Sixth Amendment.[4]

In this case, petitioner asserts that his trial counsel was constitutionally ineffective because the second DUII conviction "has severely damaged [petitioner's] ability to adjust his immigration status," such that he "is facing certain deportation," and that those consequences "were clear and easily ascertainable." In petitioner's view, to quote his

---

[4] Prior to *Padilla*, Oregon was one of the few states to require criminal defense attorneys to give *any* immigration advice. *Chavez*, 364 Or at 659. Since 1985, it has been the rule in Oregon that "lawyers will fall below the standard that the Oregon Constitution requires if they fail to warn clients who are not United States citizens that a guilty plea 'may result' in deportation and other adverse immigration consequences." *Id.*; *see Lyons v. Pearce*, 298 Or 554, 567, 694 P2d 969 (1985); *Gonzalez v. State of Oregon*, 340 Or 452, 459, 134 P3d 955 (2006) (reaffirming *Lyons*). In his opening brief, petitioner summarily asserts that, after *Padilla*, the Oregon Constitution should be interpreted to require the same advice regarding immigration consequences as the Sixth Amendment. Petitioner cites no authority for that proposition, and we have at least twice rejected the same argument. *See Aguilar v. State of Oregon*, 292 Or App 309, 314-15, 423 P3d 106 (2018) (recognizing that *Gonzales* continues to state the standard under the Oregon Constitution); *Saldana-Ramirez v. State of Oregon*, 255 Or App 602, 608 n 4, 298 P3d 59 (2013) (same). Petitioner has not developed a separate argument under the Oregon Constitution. In any event, the Oregon constitutional standard is lower, so petitioner cannot prevail under Article I, section 11, given our disposition under the Sixth Amendment.

opening brief, trial counsel was required to advise petitioner that he "*will* be deported" if he pleads guilty to a second DUII, rather than that he "*could* be" deported.[5] (Emphases in original.) In response, the state disputes that the immigration consequences of the plea were clear and easily ascertainable, and it maintains that petitioner received constitutionally effective representation.

The threshold question, then, is whether the immigration consequences of petitioner's guilty plea to the second DUII were *clear and easily ascertainable*, such that the Sixth Amendment required petitioner's trial counsel to recognize those consequences and communicate them to petitioner, or whether they were *unclear or uncertain*, such that the Sixth Amendment required only that he advise petitioner that a conviction might carry a risk of adverse immigration consequences. *Padilla*, 559 US at 369; *see also Daramola*, 294 Or App at 465 ("In approaching any *Padilla*-based claim the analysis begins with the threshold question: Are the immigration consequences clear?"). If the immigration consequences of petitioner's plea were clear and easily ascertainable, then petitioner's trial counsel was personally responsible for ensuring that petitioner received correct advice on that issue, *Daramola*, 294 Or App at 465, and he could not simply assume that petitioner was getting correct advice from his immigration attorney. Conversely, if they were unclear or uncertain, then trial counsel only needed to put petitioner on general notice that his plea might have immigration consequences, at which point it was petitioner's choice whether to consult an immigration attorney before entering the plea.

We agree with the state that, in this case, petitioner has not established that the immigration consequences of his plea were clear and easily ascertainable in 2013. Unlike the petitioner in *Padilla*, petitioner was already subject to deportation *before* he pleaded guilty to the second DUII charge, because, to use Carter's phrasing, petitioner was "here without legal status." Although we disagree with the

---

[5] Petitioner also argues that he was prejudiced by trial counsel's alleged ineffectiveness, but, given our disposition, we need not reach the issue of prejudice.

state that petitioner's lack of legal status makes *Padilla* inapplicable *per se*, petitioner's lack of legal status does muddy the waters as far as the immigration consequences of his plea are concerned. Unlike the petitioner in *Padilla*, petitioner did not have a legal immigration status that he could *lose* as a result of pleading guilty to a crime. *See Padilla*, 559 US at 360 (as a lawful permanent resident, the petitioner was subject to immediate deportation under 8 USC § 1227 when he was convicted of drug distribution charges); *see also Garcia-Navarro v. State of Oregon*, 290 Or App 587, 588, 417 P3d 464 (2018) (similar). Instead, petitioner's contention is that, as someone without legal status, the second DUII conviction made it significantly more challenging for him to successfully obtain a discretionary cancellation of removal, based on good moral character.

The difficulty with petitioner's argument is that petitioner fails to explain—or at least fails to explain persuasively—how it would have been clear and easily ascertainable to petitioner's trial counsel in 2013 that pleading guilty to the second DUII "virtually assured [petitioner's] deportation." It is important to note that whether the immigration consequences of a plea were clear and easily ascertainable is a question of law, not fact. *Daramola*, 294 Or App at 466. Further, the question is whether the immigration consequences were clear and easily ascertainable to *any* competent attorney, not whether an immigration attorney with specialized knowledge would have had an opinion on the issue. *See id.* at 466-67; *see also Padilla*, 559 US at 368 (explaining that the petitioner's criminal defense counsel could have easily ascertained the immigration consequences of the plea by simply reading the relevant statute).

A post-conviction petitioner therefore cannot merely rely on an immigration attorney's expert opinion on a question of immigration law but, rather, must explain—whether through legal briefing, a lawyer's testimony, both, or otherwise—*how* the immigration consequences of a plea would have been clear and easily ascertainable to any competent attorney, including identifying the relevant sources of law. Relatedly, in the post-conviction setting, the court's task is to review the identified sources of law and determine

whether they actually made the immigration consequences of the plea clear and easily ascertainable.

Here, petitioner has not adequately demonstrated that the immigration consequences of his plea were clear and easily ascertainable. Plaintiff relies on Carter's unrefuted affidavit to establish the point, but, in reality, it does not.

In her affidavit, Carter does not identify any statute or regulation that petitioner's trial counsel could have read and thereby learned of a clear immigration consequence of petitioner's plea. *See Padilla*, 559 US at 369 (looking to the "terms of the relevant immigration statute," which were "succinct, clear, and explicit" about the removal consequences of the petitioner's conviction). Instead, Carter asserts that "competent *immigration counsel would realize* that the second DUII would trigger detainment and charges"; that "this information would be available [to trial counsel] by *consulting with a competent immigration attorney*"; and that the immigration consequences of petitioner's plea "are clear and easily ascertainable by consulting enforcement priority memos *and consulting with a practicing immigration attorney*." (Emphases added.) Again, the fact that an attorney with specialized knowledge of immigration law would have had an opinion as to the immigration consequences of a particular criminal plea does not mean that those consequences were "clear and easily ascertainable." As used in *Padilla*, "clear and easily ascertainable" means that any competent attorney would have been able to discern the immigration consequences of a particular plea by consulting readily available sources of law.

The only potential source of law that Carter identifies as relevant to whether the immigration consequences of petitioner's plea were clear—at least in conjunction with consulting an immigration attorney—is unspecified "enforcement priority memos." But petitioner has not identified the specific "enforcement priority memos" that existed in 2013, established that those memoranda were readily available to all attorneys in 2013, or addressed their contents in any way. Thus, even assuming *arguendo* that such memoranda are a source of law that a competent nonimmigration

attorney would be expected to consult,[6] we are in no position to assess whether they actually would have made the immigration consequences of petitioner's plea clear and easily ascertainable.

Given the particular immigration consequences that petitioner contends flowed from his guilty plea—that is, that the second DUII conviction made it more difficult for him to obtain a *discretionary* cancellation of removal, based on *good moral character*—it is difficult to see how those immigration consequences could have been "clear and easily ascertainable" within the meaning of *Padilla*. That is, it is difficult to see how trial counsel could have accurately advised petitioner in 2013 that he *will* be deported if he pleads guilty to the second DUII (which is the advice that petitioner now claims that he should have been given) if whether petitioner would actually be deported depended on some combination of the federal executive branch's enforcement priorities, which are presumably subject to change, and the discretionary decision of an immigration judge regarding petitioner's "moral character."[7]

*Padilla* could be read to suggest that immigration consequences that turn on issues like "moral character" are inherently unclear or uncertain. The majority in *Padilla* emphasized that the statute at issue there was specific, rather than "address[ing] some broad classification of crimes," and noted that "many of the scenarios posited by Justice Alito" in his concurrence involved "situations in which the deportation consequences of a particular plea are unclear or uncertain." *Padilla*, 559 US at 368-69. In the concurrence, then, Justice Alito discussed that "[m]ost crimes

---

[6] The record does not contain copies of the "enforcement priority memos" referenced by Carter (or any legal citations thereto) or any information about how readily available they were in 2013. As such, we express no opinion as to whether we would consider them a source of law that constitutionally adequate trial counsel would have been expected to consult in 2013. *See Padilla*, 559 US at 369 (limiting what advice a criminal defense attorney must give about immigration consequences "[w]hen *the law* is not succinct and straightforward" (emphasis added)).

[7] According to Carter, "[t]he case that [petitioner] is fighting in immigration court to avoid deportation directly involves good moral character, as required by the statute under 240A(b) and INA 101(f)," and "[d]iscretion is built into the statute, as in it is a requirement that the Immigration Judge finds the immigrant deserving of discretion."

affecting immigration status \*\*\* fall under a broad cate-
gory of crimes, such as *crimes involving moral turpitude* or
*aggravated felonies*," and explained why it is "not an easy
task" to determine if a particular crime falls into either of
those categories. *Id.* at 378 (Alito, J., concurring) (quotation
marks omitted) (emphasis in original).

       We need not go so far today, however, as to hold that
any immigration consequence that involves an exercise of
executive or judicial discretion is *per se* unclear or uncer-
tain. We do not foreclose the possibility of a circumstance
in which the immigration consequences of a plea are clear
and easily ascertainable, notwithstanding the involvement
of some executive or judicial discretion. But, in this case,
petitioner has fallen far short of establishing that the immi-
gration consequences of his guilty plea to the second DUII
charge were clear and easily ascertainable in 2013.

       In that regard, the case is similar to *Daramola*.
There, we concluded that a post-conviction petitioner had
failed to establish that the crime to which he pleaded guilty
was clearly an "aggravated felony" under 8 USC § 1101(43),
subjecting him to specific immigration consequences.
*Daramola*, 294 Or App at 466. An immigration attorney
testified at the post-conviction trial that it was "virtually
certain" that the crime would be deemed an "aggravated fel-
ony." *Id*. However, that legal conclusion was not clear on the
face of the statute, nor did petitioner point to any other legal
authority that would have made it clear to his trial counsel.
*Id*. We therefore concluded that the petitioner's trial counsel
was not constitutionally ineffective in failing to give the spe-
cific immigration advice that the petitioner contended that
he should have been given. *Id*.; *see also Aguilar v. State of
Oregon*, 292 Or App 309, 316, 423 P3d 106 (2018) (rejecting
argument that the post-conviction petitioner's trial counsel
was constitutionally ineffective for failing to give him advice
about immigration consequences related to Deferred Action
for Childhood Arrivals, which was more "comprehensive and
specific immigration advice" than *Padilla* required under
the circumstances).

       That leaves only the question of whether trial coun-
sel advised petitioner that the DUII charge "may carry a

risk of adverse immigration consequences." *Padilla*, 559 US at 369. Petitioner does not squarely address that issue. In his brief, he says at one point that trial counsel "appears not to have given [petitioner] *any* advice regarding immigration consequences" but, immediately thereafter, says that, "[b]ased on his conversation with the trial court," trial counsel "did not clearly inform petitioner that he *will* be deported, only that he 'could be' deported." (Emphases and internal quotation marks in original.) More generally, petitioner does not meaningfully develop any argument that, under *Padilla*, his trial counsel was constitutionally ineffective *even if* the immigration consequences of his plea were unclear or uncertain.

In any event, we agree with the state that evidence in the record supports the post-conviction court's implicit finding that petitioner was advised that pleading guilty to the second DUII charge might carry a risk of adverse immigration consequences.

When trial counsel was appointed, petitioner had already been detained by ICE in connection with his first DUII charge, had an immigration attorney, and was on an immigration hold. Moore met with petitioner at trial counsel's behest, on the day that counsel was appointed, and discussed with him, among other things, petitioner's immigration hold. Two weeks later, trial counsel himself talked to petitioner about the fact that petitioner had an immigration attorney. In that context, trial counsel went over the plea agreement with petitioner three days prior to the plea hearing[8]—which plea agreement contained an express statement that, if petitioner was not a United States citizen, "deportation/removal, exclusion from future entry into the United States or denial of naturalization" were "significant additional consequences" of pleading guilty. Trial counsel contemporaneously signed a certificate attesting that he had gone over all of the plea agreement provisions with petitioner

---

[8] In their affidavits, petitioner's trial counsel attested that he went through the plea petition with petitioner and an interpreter three days before the plea hearing, whereas petitioner attested that trial counsel did not review the plea petition before the hearing and did not discuss the immigration provision with him. In ruling as it did, we understand the post-conviction court to have resolved that factual dispute in trial counsel's favor.

and discussed immigration consequences. The potentially adverse immigration consequences of the guilty plea were then expressly acknowledged and discussed at petitioner's plea hearing, in his presence, with an interpreter present to translate for him. Having heard those statements, petitioner affirmatively told the trial court that he had had sufficient time to discuss the plea agreement with his trial counsel, did not have any questions about what had happened in court, and thought that "everything was clear."

On that record, the post-conviction court did not err in finding that petitioner was advised that his guilty plea might have immigration consequences. And, because petitioner failed to demonstrate that the specific immigration consequences of his plea were clear and easily ascertainable, that was the only advice that trial counsel was required to provide under *Padilla*.[9]

## CONCLUSION

The post-conviction court did not err in denying relief on petitioner's post-conviction claims. Accordingly, we affirm.

Affirmed.

---

[9] In his opening brief, petitioner contends (as part of his first assignment of error) that, because his trial counsel was constitutionally ineffective with regards to advising him on the immigration consequences of his plea, the plea was not knowing and voluntary. Having rejected the underlying premise, we reject that argument as well. *See Aguilar*, 292 Or App at 317-18 (rejecting similar argument for similar reasons).