NOT DESIGNATED FOR PUBLICATION

No. 121,300

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JEVANS O. ODHUNO,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; BRUCE C. BROWN., judge. Opinion filed July 24, 2020. Reversed and remanded with directions.

*David L. Miller*, of Ney, Adams & Miller, of Wichita, for appellant.

*Lesley A. Isherwood*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before GARDNER, P.J., WARNER, J., and ROBERT J. WONNELL, District Judge, assigned.

PER CURIAM: Based on the advice he received from both his criminal and his immigration attorneys, Jevans O. Odhuno pleaded guilty to a level 9 theft. This decision was made after Odhuno was assured that such a plea would not result in deportation. Three months after the court accepted the plea, a detainer was filed for Odhuno related to possible deportation. Odhuno moved to withdraw his plea on the basis of ineffective assistance of counsel. The district court denied his motion, and he has timely appealed.

1

*Factual and Procedural Background*

The State charged Jevans O. Odhuno with a level 7 felony theft and a level 8 felony computer crime. The State later amended the theft charge to a level 9 felony. Odhuno eventually pleaded guilty to the level 9 theft. In return for his guilty plea, the State dismissed the second count. The State also recommended an 11-month sentence. The district court followed the State's recommendation and granted Odhuno 12 months' probation with an underlying 11-month prison sentence.

Before entering his plea, Odhuno signed an acknowledgment of rights and entry of plea. The document included a paragraph which stated: "If I am not a United States citizen, I understand that a conviction of a felony offense most likely will result in my deportation from the United States."

Additionally, before accepting Odhuno's plea, the district court stated "that if you're not a citizen of the United States, that this felony conviction most likely will result in your deportation from the United States." Odhuno's defense attorney interjected, stating:

> "Your Honor, we've actually been through this with the prosecutors and with an immigration attorney, just so the Court's aware. We believe that the circumstances of this crime are such that because it's not by deceit or fraud, that's alleged in the complaint, rather by unauthorized control over property, that that will not have a trigger immigration consequences, in addition to the fact that the proposed sentence is going to be less than a year in the guidelines. And having vetted that with both the attorney through the prosecutor's officer and an immigration attorney, we believe that that will not have the result of deportation."

After hearing these statements, the district court addressed the issue again, with less certainty by stating: "Okay. And it's a fluid situation, I mean, the law always is, it's

2

subject to change. And it's just case law, the courts require that I have to advise you that this could very well have consequences that result in you having to be deported. You understand that?" Odhuno affirmed that he understood the possible consequences.

The possible deportation was again addressed at the sentencing hearing. Odhuno's defense attorney explained to the court:

"[T]he reason for the amended charge and the recommendation for low number in this case is that, as [the State], I presume, will attest, Mr. Odhuno is looking at a situation with regard to immigration that were he to be convicted of a charge that was originally— that he was originally accused of in the complaint case or if he was to be convicted of a charge that would be in excess of 12 months of an underlying sentence, that he might be subject to immigration consequences.

" . . . [T]his plea agreement was worked out, what the parties have contemplated here with a sentence of 11 months, low number, and also with an amended charge, he should not face any immigration consequence for that, based on both the consultation with his immigration attorney, in addition to consultations [the State] had with other prosecutors in his office that are aware of the immigration laws as relates to Mr. Odhuno's case. So the parties' intent is that he not face immigration consequences for this."

The State told the district court:

"Your Honor, in candor to the Court, I did speak with an attorney with the Immigration and Customs Enforcement, and my understanding is that if it's 12 months or more. If it touches 12 months, that it does implicate certain immigration consequences, that if it were, like, 364 days or 11 months, 20—long as it's underneath 12 months, it does not trigger those—those consequences. So my understanding is it's 12 months or more; and so, hence, the purpose of the plea agreement for the low number for the amended charge would be 11 months, it does not run afoul of any immigration issues."

3

After the sentence was imposed, the district court took additional time to explain to Odhuno the role of the immigration issue in the ultimate decision regarding the applicable sentence by stating:

> "Well, Mr. Odhuno, just so you know, looking at the facts of this, I was originally going to sentence you to 12 months as the mid number as your controlling sentence. I wasn't aware of any immigration issues until today. But I've obviously changed that to the 11-month sentence since, apparently, it would have resulted in some major problems for you."

The court then continued to discuss the expectations for Odhuno moving forward, based on a presumption that he would be carrying out his sentence in the United States.

Three months after being sentenced, United States Immigration and Customs Enforcement (ICE) filed a detainer on Odhuno because he was convicted of two crimes of moral turpitude. The first was a 2011 conviction for misdemeanor sexual battery. The second was the felony conviction in this case.

Odhuno filed a motion to withdraw his plea with the district court. The motion to withdraw his plea explained that Odhuno did not think his conviction in this case would result in deportation and that "[h]ad he known that deportation was still a possibility with his plea, he never would have taken it." Odhuno also explained that he received erroneous advice from the immigration attorney he consulted with before entering his plea. Additionally, Odhuno argued that there was a mutual mistake between "him and his immigration attorney, and perhaps the prosecutor and the court as well, with regard to the immigration impact of his case."

At a hearing on his motion, Odhuno testified that before entering his plea he consulted with an immigration attorney, Christopher O'Hara, regarding the possible consequences of his plea. According to Odhuno, O'Hara told him that if he was convicted

4

of two or more crimes of moral turpitude then he could be deported. O'Hara was aware of Odhuno's prior conviction for misdemeanor sexual battery and told Odhuno that it "was not a crime involving moral turpitude." O'Hara did not testify at the hearing and this evidence was not rebutted.

Based on the advice he received, Odhuno believed that he would only have one conviction for a crime involving moral turpitude as a result of his plea—the felony theft conviction. O'Hara also told Odhuno that any aggravated felony was deportable but that was an avoidable consequence. O'Hara told Odhuno that so long as the felony conviction resulted in a sentence of less than 12 months' imprisonment, it would not be an aggravated felony for immigration purposes.

Odhuno testified that had he known the misdemeanor sexual battery was a crime of moral turpitude he would not have entered a plea of guilty, and instead, would have proceeded to trial. Odhuno's testimony at the motion hearing was not rebutted. The district court denied Odhuno's motion, finding that "*Padilla* was met in this case and that this certainly doesn't rise to the higher level of manifest injustice."

Odhuno timely appeals from the denial of his motion.

*Did the district court abuse its discretion by denying Odhuno's postsentence motion to withdraw his plea?*

On appeal, Odhuno argues the district court erred by denying his postsentence motion to withdraw his plea because his right to effective counsel was denied when his immigration attorney provided incorrect advice regarding the consequences of his plea.

*Standard of Review*

"To correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw the plea." K.S.A. 2019 Supp. 22-3210(d)(2). Generally, an appellate court will not disturb a district court's denial of a postsentence motion to withdraw plea absent an abuse of discretion. *State v. Johnson*, 307 Kan. 436, 443, 410 P.3d 913 (2018).

A judicial action constitutes an abuse of discretion if: (1) it is arbitrary, fanciful, or unreasonable; (2) it is based on an error of law; or (3) it is based on an error of fact. *State v. Ingham*, 308 Kan. 1466, 1469, 430 P.3d 931 (2018). Odhuno bears the burden of proving the district court abused its discretion. See *State v. Thomas*, 307 Kan. 733, 739, 415 P.3d 430 (2018).

*Discussion*

When determining whether a defendant should be allowed to withdraw his or her plea, courts rely on three factors—often referred to as the *Edgar* factors—to determine whether manifest injustice exists that would warrant a plea withdrawal. See *State v. Johnson*, 307 Kan. 436, 443, 410 P.3d 913 (2018).

The *Edgar* factors ask: (1) whether the defendant was represented by competent counsel; (2) whether the defendant was misled, coerced, mistreated, or unfairly taken advantage of; and (3) whether the plea was fairly and understandingly made. These factors should not be applied mechanically and to the exclusion of other factors. *State v. Fritz*, 299 Kan. 153, 154, 321 P.3d 763 (2014). These factors establish "'viable benchmarks'" for the district court when exercising its discretion, but the court should not ignore other facts that might exist in a particular case. *State v. Schaefer*, 305 Kan. 581, 588, 385 P.3d 918 (2016).

6

"A defendant filing a postsentence motion to withdraw plea under K.S.A. 22-3210(d) that alleges ineffective assistance of counsel due to deficient performance must meet constitutional standards to demonstrate manifest injustice." *State v. Bricker*, 292 Kan. 239, 245, 252 P.3d 118 (2011). To show ineffective assistance under the constitutional standard—commonly known as the *Strickland* test—a defendant must show that (1) counsel's performance fell below the objective standard of reasonableness and (2) there is a reasonable probability that but for counsel's errors, the result of the proceeding would have been different. See *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *Chamberlain v. State*, 236 Kan. 650, 656-57, 694 P.2d 468 (1985). A "'reasonable probability'" is a probability sufficient to undermine confidence in the outcome. *State v. Gleason*, 277 Kan. 624, 644, 88 P.3d 218 (2004).

In *Padilla v. Kentucky*, 559 U.S. 356, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010), the United States Supreme Court held that an attorney must inform his or her client whether the client's plea carries a risk of deportation. In that case, the defendant pleaded guilty to transporting a large amount of marijuana. In a postconviction proceeding, Padilla claimed that his counsel not only did not advise him of the possibility of deportation, but also told him that he did not need to worry about immigration because of the amount of time he had spent in the country. The Supreme Court held that "advice regarding deportation is not categorically removed from the ambit of the Sixth Amendment right to counsel." 559 U.S at 366.

The Supreme Court applied the *Strickland* test to Padilla's claim. The Court found that the advice from Padilla's counsel fell below an objective standard of reasonableness as it failed to inform Padilla that he would be eligible for deportation as a result of his plea. 559 U.S. at 368-69. The Court noted that "[t]he consequences of Padilla's plea could easily be determined from reading the removal statute, his deportation was presumptively mandatory, and his counsel's advice was incorrect." 559 U.S. at 369. The Court went on

7

to say that "when the deportation consequence is truly clear, as it was in this case, the duty to give correct advice is equally clear." 559 U.S. at 369. But the Court did acknowledge that immigration consequences are not always clear and that when deportation consequences are uncertain, defense counsel "need do no more than advise a noncitizen that pending criminal charges may carry a risk of adverse immigration consequences." 559 U.S. at 369.

It does not appear that Kansas courts have addressed the implications of *Padilla* when a defendant receives advice from immigration counsel in addition to appointed counsel. However, other jurisdictions have done so. For example, in *Ex parte Aguilar*, 537 S.W.3d 122, 128 (Tex. Crim. App. 2017), the court noted: "When a criminal defense attorney is advised by an immigration attorney and correctly relies on that advice, the advice and immigration-law knowledge is imputed to the criminal defense attorney and his performance is evaluated in light of that expertise."

The Oregon Court of Appeals similarly reasoned that when a criminal defense attorney relies on outside immigration attorneys to educate himself or herself about immigration consequences, the outside immigration counsel "functions as a member of the defense team." *Daramola v. State*, 294 Or. App. 455, 464, 430 P.3d 201 (2018). The court noted that consulting with an immigration attorney is a tool available to defense counsel, but it "does not obviate defense counsel's Sixth Amendment obligation to provide constitutionally adequate advice." 294 Or. App. at 464. See *Madrigal-Estrella v. State*, 303 Or. App. 124, 135, 463 P.3d 23 (2020) (reasoning that defense counsel cannot assume that defendant is getting correct advice from his or her immigration attorney); *People v. Ksiazek*, 2012 WL 6955500, at *5 (Ill. App. Ct. 2012) (unpublished opinion) (noting defense counsel and immigration attorney "had an affirmative duty to give the defendant correct advice regarding the deportation consequences of his guilty plea"). But see *Maryland v. Podieh*, 2019 WL 1643777, at *14 (Md. Ct. Spec. App. 2019) (holding

*Padilla* does not require defense counsel to verify information provided directly to a defendant by an immigration attorney), *cert. granted* 465 Md. 666 (2019).

If defense counsel relies on advice from an immigration attorney when creating a plea bargain, then defense counsel should either couch their assurances or verify the immigration attorney's advice. To do otherwise risks running afoul of the requirement to provide correct advice regarding possible immigration consequences to a plea. See *Padilla*, 559 U.S. at 368-69. See also KRPC 2.1 (2020 Kan. S. Ct. R. 348) ("In representing a client, a lawyer shall exercise independent professional judgment and render candid advice."). Therefore, this court finds the rationale of the Oregon and Texas courts described above to be consistent with the mandate from the United States Supreme Court regarding the totality of immigration advice given in a Sixth Amendment context. Applying that rationale to this case would bring the advice Odhuno received from O'Hara within the purview of his Sixth Amendment right.

Under 8 U.S.C. § 1227(a) (2016): "Any alien . . . in and admitted to the United States shall, upon order of the Attorney General, be removed if the alien is within one or more of the following classes of deportable aliens." Odhuno would be deportable if he qualified as: "Any alien who at any time after admission is convicted of two or more crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct, regardless of whether confined therefor and regardless of whether the convictions were in a single trial, is deportable." 8 U.S.C. § 1227(a)(2)(A)(ii). As explained in greater detail below, the statute and corresponding caselaw are clear that Odhuno's prior conviction was a crime involving moral turpitude for which he would be deportable.

O'Hara told Odhuno about the statute, but specifically advised him that his earlier conviction for misdemeanor sexual battery was not a crime involving moral turpitude. O'Hara assured Odhuno that he was not eligible for deportation due to two convictions

from crimes involving moral turpitude, Odhuno believed he only needed to worry about avoiding a sentence longer than a year. See 8 U.S.C. § 1227(a)(2)(A)(iii). Odhuno's defense attorney similarly focused during plea bargaining and sentencing on Odhuno being sentenced to less than 12 months' imprisonment to avoid deportation.

The prevailing federal caselaw is clear that a conviction for misdemeanor sexual battery is a crime involving moral turpitude. Although the decision was filed shortly after Odhuno's sentencing hearing, the federal district court in the District of Kansas recently addressed the issue. In *Perez-Ramirez v. Norwood*, 322 F. Supp 3d 1169, 1171 (D. Kan. 2018), the federal district court held that ICE did not exceed its authority by detaining Perez-Ramirez after he pleaded guilty to charges of sexual battery. The court reasoned that under 8 U.S.C. § 1226(c) (2016) and 8 U.S.C. § 1182(a)(2)(A)(i)(1) (2016), an alien who commits certain offenses, including those that involve moral turpitude, must be taken into custody. "[A]ccordingly, [Perez-Ramirez'] guilty plea to charges of sexual battery required ICE to detain him." 322 F. Supp. 3d at 1171. This holding is consistent with other federal cases in existence at the time Odhuno received his legal advice on the applicability of his crimes to his immigration status. See *Mohamed v. Holder*, 769 F.3d 885, 887 (4th Cir. 2014) (defendant acknowledged that sexual battery offense was a crime involving moral turpitude); *Gonzalez-Cervantes v. Holder*, 709 F.3d 1265, 1270 (9th Cir. 2013); *Raya-Moreno v. Holder*, 504 Fed. Appx 589, 590 (9th Cir. 2013) (defendant did not argue that sexual battery was not a crime involving moral turpitude).

In *Gonzalez-Cervantes*, the Ninth Circuit explained that a crime is "morally turpitudinous if it is 'vile, base, or depraved,' and 'violates accepted moral standards'; 'the essence of moral turpitude' is an 'evil or malicious intent.'" 709 F.3d at 1267 (quoting *Latter-Singh v. Holder*, 668 F.3d 1156, 1161 [9th Cir. 2012]). The court explained that because sexual battery "necessarily inflicts harm—the touching of the victim's intimate part against his or her will—it is distinguishable from sex-related offenses this Court has found do not categorically involve moral turpitude." 709 F.3d at 1269.

10

Under Kansas law, misdemeanor sexual battery requires "the touching of a victim . . . who does not consent thereto, with the intent to arouse or satisfy the sexual desires of the offender or another." K.S.A. 2019 Supp. 21-5505(a). Given the federal caselaw available for review, and Kansas' definition of sexual battery, it is not reasonable to advise a client that a conviction for sexual battery would not constitute a crime involving moral turpitude. See K.S.A. 2019 Supp. 21-5505(a); *Gonzalez-Cervantes*, 709 F.3d at 1267, 1269. Given this, O'Hara's assurance that the sexual battery was not a crime involving moral turpitude falls below an objective standard of reasonableness as required by *Padilla*. See *Padilla*, 559 U.S. at 366, 368-69.

The State argues that the advice given by the immigration attorney "fell within the arena of reasonable professional assistance." However, the State provides no supportive cases, statutes or secondary sources that misdemeanor sexual battery could not be a crime of moral turpitude.

The district court in this case, and the State on appeal, point to *State v. Laicer*, No. 112,807, 2015 WL 5036916 (Kan. App. 2015) (unpublished opinion), as support for the decision to deny Odhuno's motion. In *Laicer*, this court affirmed the denial of Laicer's motion to withdraw plea because Laicer "fully understood the immigration consequences of his plea." 2015 WL 5036916, at *8. Laicer was charged with aggravated battery and signed a written acknowledgment of rights and entry of plea to one count of reckless aggravated battery. The acknowledgment stated: "'If I am not a United States Citizen, I understand that a conviction of a felony offense most likely will result in my deportation from the United States.'" 2015 WL 5036916, at *1. As part of the plea agreement, the State would recommend the mid-number sentence, 32 months' imprisonment. The State also opposed Laicer's motion for border box findings and for a durational departure. The plea agreement also indicated that Laicer "'has been fully advised pursuant to *Padilla*, that this case may impact his immigration status.'" 2015 WL 5036916, at *1.

11

At the plea hearing, Laicer acknowledged that he was a permanent resident alien and said that he understood that his conviction could be a deportable offense. Laicer also acknowledged that he had an immigration attorney who was assisting him with understanding the immigration consequences of his plea. When asked again, Laicer stated that he had discussed his possible deportation with his attorney.

At sentencing, the district court denied Laicer's departure motion and sentenced him to 31 months' imprisonment. Laicer filed a motion to withdraw his plea, alleging that his attorney had told him there was a chance he could stay in the United States and not be deported despite his felony conviction. His motion also acknowledged that he told his counsel that if he pleaded guilty to a felony, he would be facing deportation procedures.

The district court denied Laicer's motion without holding an evidentiary hearing. On appeal, this court affirmed the district court. This court reasoned that Laicer was well aware that his plea and conviction could result in his deportation. This court pointed to Laicer's acknowledgement of the consequences in the written plea agreement, his statements during the plea colloquy, his statements regarding possible deportation in his motion for departure, the discussion regarding his immigration status during sentencing, and his own acknowledgment in his motion to withdraw plea that he told his counsel he was facing deportation if he pleaded guilty to a felony. Given that "two attorneys and the trial judge made it clear to Laicer that he was pleading guilty to a deportable offense," this court held that the requirements set out in *Padilla* were met. 2015 WL 5036916, at *6.

This court specifically noted that "Laicer fails to establish that his attorney gave him incorrect advice about the immigration consequences of his plea." 2015 WL 5036916, at *7. This court went on to say that even if his attorney gave incorrect advice, Laicer failed to make a viable claim that, but for counsel's error, he would not have entered a guilty plea and insisted on going to trial. This court summed up the case by

12

stating, "the record provides overwhelming evidence that Laicer fully understood the immigration consequences of his plea" and that he "knew all along that his guilty plea would 'most likely' result in his deportation." 2015 WL 5036916, at *8.

The State is correct that *Laicer* and this case have many similarities. Like *Laicer*, Odhuno signed an acknowledgement that a conviction for a felony would likely result in his deportation, the district court informed Odhuno that a felony conviction would likely result in his deportation, and Odhuno's attorneys also informed him that deportation was a possible consequence of his plea. But the similarities end there. Here, Odhuno was assured by counsel, so long as the court sentenced him to less than 12 months' imprisonment, that he would not be deported because his earlier sexual battery conviction was not a crime involving moral turpitude. As discussed above, this was incorrect advice. This is precisely what did not occur in *Laicer*.

The defendant in *Laicer* moved for a downward departure in the hope of receiving a sentence of less than 12 months, and the State opposed that request. The State in that case also requested that the court make sure that the defendant had been advised about the *Padilla* factors regarding the potential impact of the presumptive sentence. The factual record in the case at bar is clearly distinguishable from *Laicer*.

The State also points to several other cases to support its argument that the notifications about the possibility of deportation in the plea agreement and plea colloquy satisfy the requirements of *Padilla*. See *State v. Montes-Jurado*, No. 105,564, 2013 WL 1444321, at *2 (Kan. App. 2013) (unpublished opinion) (defendant's testimony that counsel told him he would be deported only if he went to prison refuted by counsel's testimony that he did not tell defendant he would not be deported if he received probation); *State v. Grajeda*, No. 106,277, 2012 WL 2326026, at *2-3 (Kan. App. 2012) (unpublished opinion) (no allegation that defendant received incorrect information

13

regarding possible immigration consequences); *State v. Lowe*, No. 103,678, 2012 WL 139264, at *4 (Kan. App. 2012) (unpublished opinion) (defendant testified that his counsel did not tell him about immigration consequences). The acknowledgment of potential immigration issues on a written agreement and making a verbal statement in court regarding understanding immigration issues, when based on clearly incorrect advice that forms the basis of those beliefs, does not equate to an all-encompassing waiver of Sixth Amendment guarantees of effective counsel. The case at bar contains unrefuted evidence from the motion hearing that Odhuno was assured he would not be deported based on the plea agreement and avoiding immigration was the parties' joint purpose in the plea agreement. These facts distinguish the cases cited by the State.

Additionally, the State acknowledges in its brief that it was the parties' intent to avoid the consequences of deportation. At the sentencing hearing, the prosecutor stated to the court, in the physical presence of the defendant, that "[as] long as it's underneath 12 months, it does not trigger those [immigration] consequences," and that "the purpose of the plea agreement for the low number for the amended charge would be 11 months, it does not run afoul of any immigration issues." The district court went on to state that it was originally going to sentence 12 months but reduced it to 11 months once it was advised of the effect on immigration issues. In this case, the defendant reasonably relied on the cumulative statements of his attorneys, the prosecutor, and the judge to serve as a basis for entering the plea agreement and acknowledging the potential affects regarding his immigration status.

Because O'Hara's advice that he was "sure" that sexual battery was not a crime involving moral turpitude was incorrect, his advice "'fell below an objective standard of reasonableness.'" *Padilla*, 559 U.S. at 366 (quoting *Strickland*, 466 U.S. at 688). Because O'Hara's advice fell below an objective standard of reasonableness, this court must then determine whether there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. See *Strickland*, 466 U.S. at 694. This

is predominately the type of false assurance, when coupled with clear caselaw and statutory language, that requires a finding of deficiency in legal advice as required by *Padilla*, 569 U.S. 368.

Odhuno testified that he would not have pleaded guilty had he known his earlier sexual battery conviction was a crime of moral turpitude which would result in his deportation. Rather, he would have proceeded to trial. This testimony was not rebutted, was not disbelieved by the court, and was not contradicted by other surrounding events. Accordingly, Odhuno has established a reasonable probability that, but for the erroneous advice he received, the result of the proceeding would have been different as required by *Strickland*. See 466 U.S. at 694.

The district court was required to apply the *Edgar* factors listed above in determining whether to allow Odhuno to withdraw his plea. In its ruling from the bench denying the motion, the district court stated that no evidence had been presented regarding whether the legal advice was wrong, and the court could not find that it was defective. The district court also commented that allowing this plea to be withdrawn may result in defendants withdrawing pleas every time the advice did not match the outcome. The court did not analyze:  (1) whether the defendant was represented by competent counsel; (2) whether the defendant was misled, coerced, mistreated, or unfairly taken advantage of; or (3) whether the plea was fairly and understandingly made. This was required under *Edgar* and the failure to apply this analysis was an error of law that resulted in abuse of discretion.

The record reveals that the defendant was not given competent legal advice regarding a clear legal issue. In this case the defense attorney, the prosecuting attorney and, to an extent, the district court, relied on the incorrect advice at the sentencing hearing. Under *Edgar*, *Padilla*, and *Strickland*, manifest injustice would result if Odhuno was not allowed to withdraw his plea. Given the decision of this court is to reverse the

15

conviction and remand the case based on manifest injustice, we need not address Odhuno's mutual mistake argument.

Reversed and remanded to the district court with instructions to allow Odhuno to withdraw his plea and continue with the case.